# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| FRITO-LAY NORTH AMERICA, INC. § | |
| § | |
| § | |
| v. § | Case No. 4:12-CV-74 |
| § | Judge Mazzant |
| § | |
| MEDALLION FOODS, INC. and § | |
| RALCORP HOLDINGS, INC. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss Or, In the Alternative, To Transfer to the Eastern District of Arkansas (Dkt. #16). Having considered the relevant pleadings, the Court is of the opinion that Defendants' motion should be denied.

### BACKGROUND[1]

Medallion Foods, Inc. ("Medallion") is an Arkansas corporation with its principal place of business in Newport, Arkansas. It is a manufacturer of private-label food products, including corn-based snack foods. Ralcorp Holdings, Inc. ("Ralcorp") is a Missouri corporation with its principal place of business in St. Louis, Missouri. Ralcorp is a holding company, and is Medallion's parent company.

On February 8, 2012, Plaintiff sent a cease-and-desist letter to Defendants asserting that Defendants' product, BOWLZ, infringed Plaintiff's patent and trade dress rights as to its product TOSTITOS SCOOPS!. The letter gave Defendants until 12:00 noon on February 10, 2012, to comply. Defendants resisted Plaintiff's attempts at communication, and filed a complaint for declaratory relief in the Eastern District of Arkansas on February 10, 2012. Subsequently, Plaintiff

---

[1] All background facts are taken from Defendants' Motion to Dismiss Or, In the Alternative, to Transfer to the Eastern District of Arkansas (Dkt. #16), and Plaintiff's Response (Dkt. #31).

filed its complaint in this Court on February 10, 2012 (Dkt. #1).

On March 20, 2012, Chief Judge J. Leon Holmes in the Eastern District of Arkansas denied Defendants' pending motion to enjoin Plaintiff from pursuing the action before this Court and granted in part Plaintiff's motion to dismiss the Arkansas action (Dkt. #35, Ex. A). Chief Judge Holmes stayed the Arkansas action pending this Court's ruling on personal jurisdiction and venue, and noted, "If the Eastern District of Texas decides that it has personal jurisdiction and denies the motion to transfer, the [Arkansas] action will be dismissed" (Dkt. #35, Ex. A at 5).

On February 22, 2012, Defendants filed their Motion to Dismiss for Lack of Jurisdiction Or, In the Alternative, to Transfer to the Eastern District of Arkansas (Dkt. #16). Plaintiff filed its Response in opposition on March 9, 2012 (Dkt. #31). On March 19, 2012, Defendants filed a Reply (Dkt. #33). On March 27, 2012, Plaintiff filed a Sur-Reply (Dkt. #37).

## LEGAL STANDARDS

*Personal Jurisdiction*

In patent litigation, Federal Circuit law controls personal jurisdiction because the issue is "intimately involved in the substance of enforcement of the patent." *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 655 (E.D. Tex. 2007) (citing *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996)); *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1368 (Fed. Cir. 2010) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1993)). "A federal court may exercise personal jurisdiction over a foreign defendant only if (1) the long-arm statute creates personal jurisdiction over the foreign defendant, and (2) the exercise of personal jurisdiction over that defendant is consistent with the due process guarantees of the U.S. Constitution." *Keranos, LLC v. Analog Devices, Inc.*, No. 2:10-CV-207, 2011 WL 4027427, at *8

(E.D. Tex. Sept. 12, 2011) (citing *Patent Rights Prot. Grp.*, 603 F.3d at 1368-69). The Texas long-arm statute extends to the full extent permitted by the Due Process Clause. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).

Thus, to establish that the Court has personal jurisdiction over Defendants, Plaintiff must show that: (1) each Defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over each Defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-20 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985).

After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of establishing the district court's jurisdiction lies with the party seeking to invoke the court's jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When, as here, no evidentiary hearing is conducted, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Id.* (citation omitted); *see Graphic Controls Corp. v. Utah Medical Products, Inc.,* 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998). When considering the motion to dismiss, the court must accept as true the plaintiff's uncontroverted allegations and resolve all factual disputes in favor of the plaintiff. *Alpine View Co.,* 205 F.3d at 215 (citations omitted).

"Minimum contacts" can be established though contacts sufficient to support the exercise of either general or specific jurisdiction. *Viam Corp.*, 84 F.3d at 428; *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88 (2011). General jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's

contacts with the forum . . ." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). General jurisdiction exists only when the defendant's contacts with the State constitute "continuous and systematic" general contacts with the forum. *Id*. at 416. "Random, fortuitous, or attenuated contacts are not sufficient to establish general jurisdiction." *Keranos*, 2011 WL 4027427, at *9 (citing *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998)).

Specific jurisdiction exists where the plaintiff alleges a cause of action which grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8; *McIntyre*, 131 S. Ct. at 2787-88. "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

*Motion to Transfer*

A district court may transfer any civil case "for the convenience of parties and witnesses, in the interest of justice...to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I").

Once that threshold inquiry is met, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The private interest factors include (1) the relative ease of access to sources of proof; (2) the

4

availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II"); *In re Nintendo*, 589 F.3d at 1198. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id*.

The party seeking transfer of venue must show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315. The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315; *TS Tech,* 551 F.3d at 1319. The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10; *TS Tech*, 551 F.3d at 1320; *In re Nintendo*, 589 F.3d at 1200.

**ANALYSIS**

*Personal Jurisdiction*

As stated above, Medallion is an Arkansas corporation with its principal place of business in Newport, Arkansas, and Ralcorp is a Missouri corporation with its principal place of business in St. Louis, Missouri. Defendants argue that neither Defendant is subject to general or specific jurisdiction in Texas. Defendants contend that there are no facts indicating either Defendant has the necessary "systematic and continuous" contacts required to subject them to general jurisdiction. Further, Defendants assert that they do not have any contacts in Texas related to the sale of the

5

allegedly infringing tortilla chip products sufficient to subject them to specific jurisdiction.

Plaintiff asserts that Defendants are subject to personal jurisdiction under the "stream of commerce" principle. Plaintiff contends that Medallion, controlled by Ralcorp, has fulfilled and continues to fulfill repeated purchase orders for the allegedly infringing chips for one of the nation's largest retailers, Wal-Mart, that has hundreds of stores in Texas. Plaintiff argues that Defendants have an ongoing supplier relationship with Wal-Mart, which has a distribution system in place ensuring the allegedly infringing product reaches stores in Texas. Plaintiff contends that Defendants have full knowledge that the allegedly infringing tortilla chip product is sold in Texas.

The Supreme Court has held that the "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980); *GSK Technologies, Inc. v. Schneider Electric, S.A.*, No. 6:06-CV-361, 2007 WL 788343, at *2 (E.D. Tex. March 14, 2007). Under the stream of commerce theory, "if the sale of a product of a manufacturer... is not simply an isolated occurrence, but arises from the efforts of the [defendant] to serve, directly, or indirectly, the market for its product..., [then] it is not unreasonable to subject [the defendant] to suit." *World-Wide Volkswagen*, 444 U.S. at 297. Subsequently, the Supreme Court revisited the issues of personal jurisdiction under the stream of commerce theory in *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102 (1987), but the Court was fractured on the proper approach. "A plurality opinion by Justice O'Connor [in *Asahi*] advocated a requirement of additional conduct by the defendant to support personal jurisdiction under the stream of commerce theory." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (internal

6

quotations omitted); *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-CV-26, 2009 WL 1025467, at *8 (E.D. Tex. March 26, 2009). However, Justice Brennan, writing on behalf of three justices, stated that, "Mere placement in the stream of commerce is sufficient because 'as long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Icon Health*, 2009 WL 1025467, at *8 (citing *Asahi*, 480 U.S. at 117).

"The Federal Circuit Court of Appeals has not expressly decided whether Justice Brennan's view is sufficient to establish minimum contacts because it has 'yet to be presented with facts that do not meet the more rigorous standard adopted by Justice O'Connor.'" *Icon Health*, 2009 WL 1025467, at *8 (citing *Commissariat A L'Energie Atomique*, 395 F.3d 1315, 1322 n.7 (Fed. Cir. 2005)).

Defendants argue that the Supreme Court "recently revisited the proper due process standard for personal jurisdiction on a stream of commerce theory in *McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011)." REPLY at 2. Defendants contend that the Supreme Court rejected the foreseeability analysis, and made it clear that "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." REPLY at 3 (citing *McIntyre*, 131 S. Ct. at 2788).

However, as other courts in this district have also found, the plurality opinion in *McIntyre*, written by Justice Kennedy, is not the precedential holding of the Supreme Court. *Brooks & Baker, LLC v. Flambeau*, No. 2:10-CV-146, 2011 WL 4591905, at *4 (E.D. Tex. Sept. 30, 2011); *Dram Technologies, LLC v. America II Group, Inc.*, No. 2:10-CV-45, 2011 WL 4591902, at *2 (E.D. Tex.

7

Sept. 30, 2011). "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). Therefore, Justice Breyer's concurrence is the controlling opinion of the Supreme Court. Justice Breyer specifically declined to announce a new rule in stream of commerce cases, and stated: "Accordingly, on the record present here, resolving this case requires no more than adhering to our precedents." *McIntyre,* 131 S. Ct. at 2792. Further, the plurality opinion in McIntyre focused on three facts to determine whether personal jurisdiction was appropriate: (1) the distributor sold and shipped a machine on one occasion to a customer of the forum state; (2) the manufacturer wanted the distributor to sell its machines to anyone in the United States; and (3) representatives of the manufacturer attended trade shows in the United States, but not in the forum State. *Id*. at 2791. The plurality concluded that there were insufficient facts to determine that the defendant purposefully availed itself of the forum State's market.

The facts in the present case indicate a much stronger reason for the Court to hold that personal jurisdiction is proper in Texas. Medallion manufactures the allegedly infringing tortilla chips. Medallion has fulfilled and continues to fulfill repeated purchase orders for the allegedly infringing tortilla chips for Wal-Mart, a "major customer" of Defendants. Medallion knows that these allegedly infringing tortilla chips are then sold in Texas, and Medallion continues to reap the benefit of the sales of the tortilla chips in Texas. As the Federal Circuit found in a similar case, "[they] placed the accused [products] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan Co. v. Royal*

8

*Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994); *see also Icon Health*, 2009 WL 1025467, at *11; *Dram Technologies*, 2011 WL 4591902, at *3. The Federal Circuit went on to state that "the defendants' shipments into [the forum state] were purposeful or knowing as evidenced by the defendants' commercial relationship with [a forum state retailer that] was ongoing, and obviously intentional." *Icon Health*, 2009 WL 1025467, at *11 (citing *Beverly Hills Fan*, 21 F.3d at 1564). The Court finds that personal jurisdiction in the Eastern District of Texas is proper as to Medallion based on these facts.

Defendants contend that Ralcorp has no connection to the sales of allegedly infringing tortilla chips in Texas, since it is merely Medallion's parent holding company. Defendants further argue that there are no facts which would justify piercing the corporate veil to establish jurisdiction over Ralcorp through the activities of Medallion. Plaintiff asserts that Ralcorp and Medallion are part of a unitary business operation. Ralcorp filed suit with Medallion in the Eastern District of Arkansas, and admitted its involvement in making the allegedly infringing tortilla chip product. In addition, Plaintiff contends that Ralcorp exercises control over and participates fully in its subsidiaries' operations. On Ralcorp's website, Medallion is described as a "division of Ralcorp." Further, Plaintiff notes that an employment opportunity in Newport, Arkansas, presumably at the Medallion plant, is described as a job with Ralcorp Snacks, Sauces & Spreads, not with Medallion. Ralcorp and Medallion share common officers. Defendants do not controvert any of these facts asserted by Plaintiff. Ralcorp merely contends that it does not manufacture the allegedly infringing tortilla chip product.

Taking Plaintiff's allegations as true, which the Court must do in this case, and the evidence presented by the Plaintiff, the Court finds that Ralcorp and Medallion identify themselves

9

interchangeably on Ralcorp's website. Medallion is described as "combined into a single operating unit in 2008 to leverage sales and marketing opportunities." The two companies share some corporate officers, and an employment opportunity at a Medallion plant is considered employment with Ralcorp. Finally, the companies sued Plaintiff together in the Eastern District of Arkansas, jointly seeking a declaration of their rights to the allegedly infringing tortilla chip product. Given these facts presented by Plaintiff, the Court finds that Ralcorp and Medallion have sufficient minimum contacts with the State of Texas to justify subjecting them to personal jurisdiction. *See GSK Techs.,* 2007 WL 788343, at *3; *Cardsoft, Inc. v. Verifone Holdings, Inc.*, No. 2-08-CV-098, 2009 WL 361069, at *1-2 (E.D. Tex. Feb. 10, 2009).

The Court also finds that the claim arises out of or relates to Defendants' contacts with the State of Texas, since the claims all arise from the manufacture and sale of the allegedly infringing tortilla chip products. Finally, the Court finds that the exercise of jurisdiction over the Defendants does not offend traditional notions of fair play and substantial justice.

*Motion to Transfer*[2]

Defendants argue that the proper and more convenient venue for this litigation is the Northern Division of the Eastern District of Arkansas. Plaintiff contends that the Eastern District of Texas, Sherman Division, is proper, and that Defendants have not met their burden to show that the Eastern District of Arkansas is clearly a more convenient forum for this litigation. The first question the Court must address when ruling on a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit could have been filed originally in the destination venue. *Volkswagen II*, 545 F.3d at 312.

---

[2]The Court will not address the arguments regarding transfer based on the "first-to-file rule," since that argument was ruled on by the Eastern District of Arkansas and is now moot. *Ralcorp Holdings, Inc. v. Frito-Lay North America, Inc.*, No. 1:12-CV-00018 JLH (E.D. Arkansas March 20, 2012) (Holmes, J.).

The parties do not dispute that this case could have been filed in the Eastern District of Arkansas.

The Court must review a number of private and public factors with regard to convenience on a motion to transfer venue. *Volkswagen II*, 545 F.3d at 315; *TS Tech*, 551 F.3d at 1319.

## A. Private Interest Factors

*(1) The Relative Ease of Access to Sources of Proof*

"Courts analyze this factor in light of the distance that documents, or other evidence must be transported from their existing location to the trial venue." *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010) (citing *Volkswagon II*, 545 F.3d at 316). This factor will rely on which party has a greater volume of documents relevant to the litigation, and their presumed location in relation to the transferee and transferor venues. *Id*. (citations omitted). Documents that have been moved in anticipation of litigation should not be considered. *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).

Defendants assert that, "the bulk of the documentary evidence concerning the allegedly infringing product is located at Medallion's production facility in Newport, Arkansas." MOTION at 18. Defendants also assert that Wal-Mart will be a necessary source of evidence with respect to the alleged infringement of Plaintiff's trademarks and trade dress. *Id*. Defendants contend that the Northern Division of the Eastern District of Arkansas is located approximately 30 miles from Medallion's production facility, and 200 miles from Wal-Mart's headquarters in Bentonville, whereas the Eastern District of Texas is located approximately 300 miles from Wal-Mart's headquarters in Bentonville. Finally, Defendants argue that the allegedly infringing machines themselves are located in Arkansas. REPLY at 9.

Plaintiff contends that the location of the evidence does not weigh in favor of transfer because evidence related to "documents and witnesses, including persons with knowledge about the research and development, marketing, branding strategies, the effects of Defendants' deliberate knock-off product, and finances related to the TOSTITOS SCOOPS!," are located in the Eastern District of Texas. SUR-REPLY at 8. Plaintiff argues that the patent inventors are located in the Eastern District of Texas. Plaintiff contends that Defendants fail to show why evidence from Wal-Mart will be required in this case, since Medallion manufactures the allegedly infringing chips. SUR-REPLY at 9. Finally, Plaintiff argues that there may be relevant evidence obtained from Ralcorp, which is headquartered in St. Louis, Missouri. RESPONSE at 21.

"[T]his factor almost invariably turns on which party will most likely have the greater volume of relevant documents and their presumed physical location in relation to the venues under consideration." *Remmers v. U.S.*, No. 1:09-CV-345, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009) (citing *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009)). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotations omitted). However, because the sources of proof originate from varied locations, this factor is neutral. An action in the Eastern District of Arkansas is not "clearly more convenient" for transporting documents that are located in the Eastern District of Texas and potentially Missouri. *See, e.g., Konami Dig. Ent. Co. Ltd. v. Harmonix Music Sys.*, No. 6:08-CV-286-LED-JEL, 2009 WL 781134, at *4 (E.D. Tex. Mar. 23, 2009) ("While Defendants point to [the transferee district] as the location of significant sources of proof, they ignore the remaining sources of proof which originate from other

12

locations."); *Perritt v. Jenkins*, No. 4:11-CV-23-MHS-ALM, 2011 WL 3511468, at *3 (E.D. Tex. July 18, 2011) ("Because the sources of proof originate from varied locations, this factor is neutral."). Further, "a case should not be transferred if the only practical effect is to shift inconvenience from the moving party to the nonmoving party." *Goodman Co. v. A & H Supply, Inc.*, 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005). Therefore, the Court finds this factor is neutral.

*(2) The Availability of Compulsory Process*

Federal Rule of Civil Procedure 45(b)(2) allows a federal court to compel a witness' attendance at a trial or hearing by subpoena; however, the Court's subpoena power is limited by Federal Rule of Civil Procedure 45(c)(3), to those witnesses who work or reside less than 100 miles from the courthouse. *See Volkswagen* II, 545 F.3d at 316.

Defendants contend that numerous Wal-Mart employees, who will be necessary witnesses with respect to the trademark issues in this case, will be outside the subpoena power of this Court since they will have to travel (1) more than 100 miles and (2) from another state. MOTION at 19.

Plaintiff argues that Defendants have not shown why they will need testimony from Wal-Mart employees, when Medallion is the manufacturer of the allegedly infringing chips. SUR-REPLY at 9. Plaintiff asserts that it does not anticipate significant documents or testimony from Wal-Mart or its employees, especially since they are not a party to this action. *Id.* Finally, Plaintiff contends that the inventors are also non-party witnesses who are located in the Eastern District of Texas.

The Court finds that this factor is also neutral. Defendants have not identified how many witnesses or what type of evidence they will need to obtain from these witnesses employed by Wal-Mart. In addition, it is unclear whether these same employee witnesses will be under the subpoena power of the Eastern District of Arkansas or not. Further, Plaintiff indicates that the inventors of the

13

patents are located in the Eastern District of Texas. Therefore, this factor is neutral.

*(3) Cost of Attendance for Willing Witnesses*

The Fifth Circuit established the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. Where witnesses are from widely scattered locations, a trial court should not consider its "central location... in the absence of witnesses within the plaintiff's choice of venue." *Genentech*, 566 F.3d at 1344.

"In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses." *Remmers*, 2009 WL 3617597, at *5; *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). Moreover, it is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis. *Shoemake*, 233 F. Supp. 2d at 832. Again, Defendants' party and non-party witnesses are located in Arkansas and Missouri, and Plaintiff's party and non-party witnesses are located in the Eastern District of Texas. Defendants have identified no specific witnesses that will be required to testify on their behalf. Further, the Plaintiff's evidence indicates that, at least for Wal-Mart employees in Bentonville, the distance to the courthouse in Sherman is only approximately 30 extra minutes. Therefore, the Court finds this factor is also neutral.

*(4) All Other Practical Problems*

*a. Patent Rules*

Plaintiff argues that the patent rules of the Eastern District of Texas help streamline the parties' preparation for trial, which makes this factor weigh against transfer. Defendants argue that this case is primarily a trademark case, based on Plaintiff's intent to move for a preliminary injunction based on the trademark, trade dress, and unfair competition issues. Therefore, Defendants argue that the fact that the Eastern District of Arkansas does not have patent rules should not weigh against transfer.

The Court finds that this factor does not support transfer. *See EMG Tech., LLC v. Microsoft Corp.*, No. 6:09-CV-367, 2010 WL 3835768, at *5 (E.D. Tex. Sept. 28, 2010).

*b. Plaintiff's Choice of Forum*

"While not a distinct factor in the transfer of venue analysis, a plaintiff's choice of venue 'is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer.'" *Remmers*, 2009 WL 3617597, at *7 (citing *Volkswagen II,* 545 F.3d at 314 n.10). "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.* (citing *Volkswagen II,* 545 F.3d at 315). "If the defendant cannot meet this burden, the plaintiff's choice of forum should be respected." *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, No. 3:08-CV-1779-L, 2009 WL 918459, at *4 (N.D. Tex. Apr. 3, 2009) (citing *Volkswagen II*, 545 F.3d at 315). However, "[w]hen the chosen district has little or no factual nexus to the case, the plaintiff's choice of forum is less significant if other factors weigh in favor of a transfer." *Remmers*, 2009 WL 3617597, at *7 (citing *Volkswagen II*, 545 F.3d at 315-18).

In the present case, the Eastern District of Texas, Sherman Division, has a clear factual nexus

to the case given that Plaintiff is located here, and the patented technology was developed here. Therefore, the Court finds that Defendants must meet their burden to show good cause for the transfer, and if they cannot, Plaintiff's choice of venue will be respected.

## B. Public Interest Factors

*(1) The Administrative Difficulties Flowing From Court Congestion*

The first public interest factor is court congestion. Generally, this factor favors a district that can bring a case to trial faster. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative and this factor alone should not outweigh other factors. *Id*.

Plaintiffs contend that "[i]n the Eastern District of Arkansas in 2011, there were 1,864 pending cases per judge, compared with just 488 cases per judge in the Eastern District of Texas." RESPONSE at 24. Defendants argue that Plaintiff's statistics do not consider the recent retirements and administrative redistribution of cases in this Court. REPLY at 9.

The Court finds that this factor weighs slightly against transfer.

*(2) The Local Interest in Having Localized Interests Decided at Home*

Traditionally, the location of the alleged injury is an important consideration in determining how to weigh this factor. *TS Tech*, 551 F.3d at 1321. However, in a patent infringement case, when the accused products are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id*. Local interest may also be determined when a district is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community. *Hoffman-La Roche,* 587 F.3d at 1336.

Defendants argue that Arkansas has a strong interest in the interests of its corporations, processes, factory workers, and products made in Arkansas. Defendants also argue that any

injunction will affect Arkansas-based Wal-Mart. However, Defendants also contend that the Eastern District of Texas has no factual connection to the case, which is not entirely true. The allegedly infringing products are sold in the Eastern District of Texas, and the patented technology was developed in the Eastern District of Texas. Therefore, the Court finds that this factor is neutral, since both districts have an interest in the outcome of the case.

*(3) The Familiarity of the Forum with the Law that Will Govern the Case*

This case is an action arising under federal law. Therefore, this factor is neutral as to transfer.

*(4) The Avoidance of Unnecessary Problems of Conflict of Laws*

There are no conflict of law concerns in this case. This factor is neutral as to transfer.

**C. Conclusion**

The Court finds that six (6) of the private and public interest factors are neutral, and two (2) factors weigh slightly against transfer. Therefore, the Court finds that Defendants have not satisfied their burden to show that the Eastern District of Arkansas is a "clearly more convenient" forum for this litigation.

**CONCLUSION**

For the foregoing reasons, the Court finds that Defendants' Motion to Dismiss Or, In the Alternative, To Transfer to the Eastern District of Arkansas (Dkt. #16) is **DENIED.**

**IT IS SO ORDERED.**
**SIGNED this 30th day of March, 2012.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE