UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FRITO-LAY NORTH AMERICA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:12-CV-00074-ALM |
| | § | |
| MEDALLION FOODS, INC. and | § | |
| RALCORP HOLDINGS, INC., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF FRITO-LAY NORTH AMERICA, INC.'S
SECOND AMENDED COMPLAINT AND
REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIONS**

Plaintiff Frito-Lay North America, Inc. ("Frito-Lay") files this second amended complaint against Defendants Medallion Foods, Inc. ("Medallion Foods") and Ralcorp Holdings, Inc. ("Ralcorp") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for trademark infringement, trade dress infringement, unfair competition and dilution under the United States Trademark (Lanham) Act, 15 U.S.C. § 1051, et seq. (as amended); for willful patent infringement under the patent laws of the United States, 35 U.S.C. § 271 *et seq*.; for trademark dilution under Texas Business and Commerce Code § 16.29; for trademark infringement, misappropriation of trade secrets, unfair competition by simulation of appearance of goods, misappropriation of time, labor, skill, and money, and unjust enrichment under common law; and for misappropriation of trade secrets in violation of Texas Civil Practice and Remedies Code § 134.002(2).

2.      This lawsuit is brought to stop Defendants from infringing Frito-Lay's valuable trademarks, trade dress, and a patent relating to its unique TOSTITOS® SCOOPS!® tortilla

chips and from further misappropriation of Frito-Lay's valuable trade secrets.  Frito-Lay has invested significantly in this product and it has enjoyed widespread consumer acceptance and success.  Defendants' bowl-shaped tortilla chips and accompanying packaging are an intentional effort to imitate Frito-Lay's distinctive TOSTITOS SCOOPS! tortilla chips and packaging, while using manufacturing processes that infringe Frito-Lay's patent.  Defendants developed their knock-off product by wrongfully using Frito-Lay's trade secrets and know-how, which Defendants obtained by hiring former Frito-Lay employees and working with vendors who worked on TOSTITOS SCOOPS! tortilla chips for Frito-Lay.  Despite Frito-Lay's request, Defendants have not stopped manufacturing and selling their copycat chips.  Their infringement of Frito-Lay's intellectual property rights harms Frito-Lay as well as Frito-Lay customers who may be confused and deceived by Defendants' products.  Frito-Lay seeks intervention of this Court to stop Defendants from continuing their knock-off strategy.

## PARTIES

3.      Frito-Lay is a Delaware corporation having a place of business at 7701 Legacy Drive, Plano, Texas 75024.

4.      Medallion Foods is an Arkansas corporation with its principal place of business at 3636 Medallion Avenue, Newport, Arkansas 72112.  Medallion Foods has been served and has appeared in this action.

5.      Ralcorp is a Missouri corporation with its principal place of business at 800 Market Street, St. Louis, Missouri 63101. Ralcorp has been served and has appeared in this action.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

7.      This Court has personal jurisdiction over Defendants because Defendants are committing tortious acts within this State by, among other things, selling products within this state that infringe Frito-Lay's trade dress rights and which are made using processes that infringe Frito-Lay's patent.  These acts have caused injury to Frito-Lay within this State.  The events giving rise to this Complaint have occurred in this State and had effects in the State and District.

8.      Venue is proper under 28 U.S.C. §§ 1391 and 1400 in that Defendants are deemed to reside in this District, and a substantial part of the events or omissions giving rise to the claims asserted herein arose in this District.

## FRITO-LAY'S DEVELOPMENT OF TOSTITOS SCOOPS!

9.      Frito-Lay, through its predecessors in interest and title, and through its related companies, divisions and/or licensees, has been engaged in the manufacture and sale of snack foods for over fifty years and is one of the leading manufacturers of snack foods in the United States.

10.     In 2001, after expending substantial time, money, skill, and labor in developing the manufacturing process, design, and recipe for TOSTITOS SCOOPS!,  Frito-Lay launched its TOSTITOS SCOOPS! tortilla chip line.  Frito-Lay has taken care to protect its investment in TOSTITOS SCOOPS! by securing and maintaining numerous intellectual property rights.

## FRITO-LAY'S TOSTITOS SCOOPS! MARK AND TRADE DRESS

11.     Frito-Lay has used the product design of the TOSTITOS SCOOPS! tortilla chip since at least as early as 2001 to designate the source, origin and sponsorship of its TOSTITOS

SCOOPS! product.  The image below is from Frito-Lay's federally registered trademark U.S. Reg. 2,766,278; it is a trademark for the multi-sided, bowl-shaped design of the TOSTITOS SCOOPS! tortilla chip  A copy of the '278 Mark is attached as Exhibit A.



12.    Frito-Lay has further adopted and uses a distinctive trade dress for its TOSTITOS SCOOPS! tortilla chips packaging, incorporating a distinctive combination of elements, including the trademark TOSTITOS in thick black font with a white shadow superimposed over a dark yellow shield-like design, a clear panel beneath the TOSTITOS logo that showcases the unique bowl-shaped tortilla chip, which is also a trademark, a bowl of red salsa beneath the clear panel, and blue as the dominant color.

13.    For over a decade, the TOSTITOS SCOOPS! product design and related packaging have been identified with Frito-Lay's tortilla chips and have appeared on a tremendous amount of product packaging, advertising, national television commercials, in-store display racks, and point-of-purchase material.

14.    Frito-Lay's TOSTITOS SCOOPS! product design has acquired distinctiveness through extensive use and tremendous commercial success, and the TOSTITOS SCOOPS! packaging trade dress is inherently distinctive, serving to identify and indicate the source of Frito-Lay's products to the consuming public and to distinguish Frito-Lay's products and services from those of others.

## PROMOTION OF FRITO-LAY'S TOSTITOS SCOOPS! MARK AND TRADE DRESS

15.     As noted, TOSTITOS SCOOPS! tortilla chips are marketed and sold in large quantities in the United States, supported by advertising and promotion each year.  Over the last five years, Frito-Lay has spent millions of dollars advertising its TOSTITOS brand, of which the TOSTITOS SCOOPS! products are an integral component, across the nation.

16.     TOSTITOS SCOOPS! tortilla chips are an important component of the TOSTITOS brand, representing a valuable piece of the TOSTITOS portfolio.  Frito-Lay sells tens of millions of dollars per year of TOSTITOS SCOOPS! tortilla chips.  TOSTITOS SCOOPS! tortilla chips are sold in almost every supermarket in the United States, as well as in numerous convenience stores, mass merchandise stores, and other outlets.

17.     As a result of Frito-Lay's long, extensive, widespread, and substantially exclusive use of the TOSTITOS SCOOPS! product design and packaging and the extensive consumer exposure to Frito-Lay's quality products and services, Frito-Lay has developed significant and valuable goodwill.

18.     By virtue of their tremendous sales success, and extensive and popular advertising and promotional efforts, the products sold using the TOSTITOS SCOOPS! product design and packaging enjoy an extremely favorable reputation among the trade and consumers as identifying high-quality food products manufactured and sold exclusively by Frito-Lay.

19.     Frito-Lay has acquired valuable common-law rights in the TOSTITOS SCOOPS! product design and packaging throughout the United States, including Texas.

20.     Consumers have come to associate the TOSTITOS SCOOPS! product design and packaging uniquely with Frito-Lay and its goods and services.

## FRITO-LAY'S PATENT

21.     In addition to its trademark and trade dress rights, Frito-Lay owns U.S. Patent No. 6,610,344 (the "'344 Patent"), duly and legally issued on August 26, 2003.  The '344 Patent is directed to processes used to manufacture bowl-shaped tortilla chips.  A copy of the '344 Patent is attached as Exhibit B.

## FRITO-LAY'S TRADE SECRETS

22.     Frito-Lay expended substantial time, money, skill, and labor in developing and maintaining trade secrets and other confidential information related to the design and manufacture of TOSTITOS SCOOPS! and other tortilla chips.  Frito-Lay also developed and owns information that reflects its lengthy and expensive research into developing commercially feasible methods for manufacturing bowl-shaped tortilla chips.  Frito-Lay has taken reasonable steps to protect these trade secrets from disclosure or misuse.  These trade secrets cannot be easily duplicated and are valuable in creating a bowl-shaped tortilla chip, like TOSTITOS SCOOPS! or Defendants' copycat chips.

## DEFENDANTS AND THEIR ACTIVITIES

23.     More than a decade after Frito-Lay began using the TOSTITOS SCOOPS! product design and related packaging, Defendants began selling tortilla chips that use a virtually indistinguishable product shape.  Defendants' purpose in designing and developing their knock-off chips was to emulate the successful TOSTITOS SCOOPS! tortilla chips.  Defendants were able to develop their knock-off chip more quickly by hiring former Frito-Lay employees and working with vendors who worked on TOSTITOS SCOOPS!; these employees and vendors owed a duty of confidentiality to Frito-Lay.

24.     The image below highlights Defendants' intentional copying: TOSTITOS SCOOPS! tortilla chips are on the left, and Defendants' infringing tortilla chips are on the right.



25.  Defendants sell this chip in different packages depending on the retailer.  As shown below, the packaging that they use for at least one national retailer is confusingly similar to the TOSTITOS SCOOPS! packaging.   In the image below, the TOSTITOS SCOOPS! tortilla chips package is on the left, and Defendants' infringing package of tortilla chips is on the right.




26.     Defendants are trading off Frito-Lay's proprietary TOSTITOS SCOOPS! product design and usurping virtually every element of Frito-Lay's TOSTITOS SCOOPS! packaging. Like Frito-Lay, Defendants' tortilla chip has a multi-sided bowl-shaped design.  No other competitive tortilla chip is as similarly designed.  On both packages, the lettering at the top of the package is black and thick with a white shadow and is superimposed over a dark yellow shield-like design; plus, each combination of mark and shield features orange accents.  Below, in the middle of each bag, is a clear panel showing the multi-sided bowl-shaped white corn tortilla chips.  Below the panel, on the bottom third of each package, is a bowl of red salsa that spans almost the entire width of the bag.  Further, the packaging for both products is dominated by the color blue.

27.     Defendants' tortilla chips are sold through the same retail outlets and stores as Frito-Lay's products and at a similar price point of only a few dollars each.  Defendants' use of similar product shape and packaging ("Defendants' Design and Trade Dress") is in commerce and without the permission or authority of Frito-Lay.

28.     Defendants' manufacturing process for their knock-off tortilla chips infringes the '344 Patent owned by Frito-Lay; Defendants designed this infringing process with full knowledge of Frito-Lay's '344 Patent.

29.     On information and belief, in developing the design and manufacturing process for their copycat product, Defendants knowingly relied on former Frito-Lay employees and vendors, who disclosed Frito-Lay's trade secrets and information to Defendants in breach of their duties of confidentiality to Frito-Lay.  Defendants used these trade secrets and information in the design and manufacture of their copycat chips.

## DEFENDANTS' ACTIVITIES ARE CAUSING DAMAGE TO FRITO-LAY AND THE CONSUMING PUBLIC

30.     Defendants' unauthorized use of Defendants' Design and Trade Dress is likely to cause confusion, to cause mistake, or to deceive consumers and potential customers of the parties, at least as to the affiliation, connection, or association of Defendants with Frito-Lay and/or its TOSTITOS SCOOPS! product design and packaging, or as to the origin, sponsorship, or approval of Defendants' products by Frito-Lay.

31.     Defendants' unauthorized use of Defendants' Design and Trade Dress falsely indicates to the purchasing public that Defendants, their business, and/or their goods and services originate with Frito-Lay, or are affiliated, connected, or associated with Frito-Lay, or are sponsored, endorsed, or approved by Frito-Lay, or are in some manner related to Frito-Lay and/or its TOSTITOS SCOOPS! product design and packaging, when there is no connection whatsoever.

32.     Defendants' unauthorized use of Defendants' Design and Trade Dress falsely designates the origin of Defendants' products, and falsely and misleadingly describes and represents facts with respect to Defendants and their products.

33.     Defendants' unauthorized use of Defendants' Design and Trade Dress is likely to dilute the distinctive quality of Frito-Lay's TOSTITOS SCOOPS! product design and packaging.

34.     Defendants' unauthorized use of Defendants' Design and Trade Dress enables them to trade on and receive the benefit of goodwill built up at great labor and expense over many years by Frito-Lay, and to gain acceptance for their goods not solely on their own merits, but on the reputation and goodwill of Frito-Lay and its TOSTITOS SCOOPS! product design and packaging.

35.     Defendants have been and continue to be unjustly enriched by obtaining a benefit from and taking undue advantage of Frito-Lay and its goodwill.  Specifically, Defendants have unfairly competed against and taken undue advantage of Frito-Lay by trading on and profiting from the goodwill in the TOSTITOS SCOOPS! product design and packaging developed and owned by Frito-Lay, resulting in Defendants wrongfully obtaining a monetary and reputational benefit for their own business and products.

36.     Defendants' unauthorized use of Defendants' Design and Trade Dress removes from Frito-Lay the ability to control the nature and quality of products provided under its own TOSTITOS SCOOPS! product design and packaging, and places the valuable reputation and goodwill of Frito-Lay in the hands of Defendants, over which Frito-Lay has no control.

37.     Defendants' infringement of the '344 Patent is causing or threatening irreparable harm to Frito-Lay, including lost sales, lost market share, price erosion, damage to customer relationships, and lost goodwill.

38.     Defendants have been unjustly enriched by their misappropriation of Frito-Lay's trade secrets and skill, money, time, and labor.  Defendants have a free ride to compete unfairly with Frito-Lay.  Defendants faced a significantly lower burden of time, labor, skill-development, and expenses in developing and manufacturing their copycat chips than Frito-Lay incurred in developing and manufacturing TOSTITOS SCOOPS!

39.     Unless restrained by this Court, these acts of Defendants will continue, and they will continue to cause irreparable injury to Frito-Lay and to the public for which there is no adequate remedy at law.

## COUNT ONE:  FEDERAL TRADEMARK INFRINGEMENT

40.     Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

41.     The acts of Defendants complained of herein constitute infringement of Frito-Lay's federally registered TOSTITOS SCOOPS! product design in violation of 15 U.S.C. § 1114.

42.     Defendants are imitating the TOSTITOS SCOOPS! product design with full knowledge of Frito-Lay's rights, and in bad faith with a willful and deliberate intent to trade on the vast goodwill in Frito-Lay's TOSTITOS SCOOPS! product design.  In view of the willful nature of Defendants' activities, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

43.     Defendants' conduct has caused and is causing irreparable injury to Frito-Lay and, unless enjoined by this Court, will continue both to damage Frito-Lay and to deceive the public.  Frito-Lay has no adequate remedy at law.

## COUNT TWO:  TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION

44.     Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

45.     The acts of Defendants complained of herein constitute trade dress infringement and unfair competition in violation of 15 U.S.C. § 1125(a).

46.     Frito-Lay has been damaged by Defendants' acts of infringement and unfair competition.

47.     Defendants' infringement has been willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117.

48.     Defendants' conduct has caused and is causing irreparable injury to Frito-Lay and, unless enjoined by this Court, will continue both to damage Frito-Lay and to deceive the public.  Frito-Lay has no adequate remedy at law.

## COUNT THREE: FEDERAL TRADEMARK DILUTION

49.     Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

50.     As a result of extensive promotion and use of the TOSTITOS SCOOPS! product design by Frito-Lay for many years, the TOSTITOS SCOOPS! product design is famous throughout the United States, highly distinctive of Frito-Lay's goods, and uniquely and exclusively associated with Frito-Lay.   The TOSTITOS SCOOPS! product design became famous long before Defendants commenced their unauthorized use of the TOSTITOS SCOOPS! product design as described herein.

51.     The acts of Defendants complained of herein constitute a likelihood of dilution of the distinctive quality of the TOSTITOS SCOOPS! shape in violation of 15 U.S.C. § 1125(c).

52.     Defendants' conduct has caused and is causing irreparable injury to Frito-Lay and, unless enjoined by this Court, will continue both to damage Frito-Lay and to deceive the public.  Frito-Lay has no adequate remedy at law.

## COUNT FOUR:  PATENT INFRINGEMENT – '344 PATENT

53.     Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

54.     Defendants' tortilla chips result from processes which infringe one or more claims of the '344 Patent either literally or under the doctrine of equivalents.

55.     Defendants are liable for infringing the '344 Patent under 35 U.S.C. § 271.

56.     Defendants' infringement has been willful, entitling Frito-Lay to enhanced damages under 35 U.S.C. § 284.

57.     The infringement of the '344 Patent by Defendants has injured and damaged Frito-Lay, and will continue to cause Frito-Lay harm unless enjoined by this Court.

## COUNT FIVE:  TRADEMARK INFRINGEMENT UNDER TEXAS COMMON LAW

58.     Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

59.     The acts of Defendants complained of herein constitute trademark infringement under the common law of Texas.

60.     Defendants' conduct has caused and is causing irreparable injury to Frito-Lay and, unless enjoined by this Court, will continue both to damage Frito-Lay and to deceive the public.  Frito-Lay has no adequate remedy at law.

## COUNT SIX:  TRADEMARK DILUTION UNDER TEXAS STATE LAW

61.     Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

62.     The TOSTITOS SCOOPS! product design is inherently distinctive and/or has acquired distinctiveness as a result of Frito-Lay's extensive promotion and use.

63.     Defendants' conduct alleged herein is likely to dilute, blur and/or tarnish the distinctive qualities of the TOSTITOS SCOOPS! product design in violation of Section 16.29 of the Business and Commerce Code of the State of Texas.

64.     Defendants' conduct has caused and is causing irreparable injury to Frito-Lay and, unless enjoined by this Court, will continue both to damage Frito-Lay and to deceive the public.  Frito-Lay has no adequate remedy at law.

## COUNT SEVEN:  MISAPPROPRIATION OF TRADE SECRETS

65.    Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

66.    On information and belief, the acts complained of herein constitute misappropriation of trade secrets by Defendants under common law.

67.    Defendants' conduct has caused and is causing irreparable injury to Frito-Lay and, unless enjoined by this Court, will continue to damage Frito-Lay.  Frito-Lay has no adequate remedy at law.

## COUNT EIGHT:  MISAPPROPRIATION OF TIME, LABOR, SKILL, AND MONEY

68.    Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

69.    On information and belief, the acts complained of herein constitute misappropriation of time, labor, skill, and money by Defendants under common law.

70.    Defendants' conduct has caused and is causing irreparable injury to Frito-Lay and, unless enjoined by this Court, will continue to damage Frito-Lay.  Frito-Lay has no adequate remedy at law.

## COUNT NINE:  SIMULATION OF APPEARANCE OF GOODS

71.    Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

72.    The acts complained of herein constitute unfair competition by simulation of appearance of goods under common law.

73.     Defendants' conduct has caused and is causing irreparable injury to Frito-Lay and, unless enjoined by this Court, will continue to damage Frito-Lay.   Frito-Lay has no adequate remedy at law.

### COUNT TEN:  VIOLATIONS OF THE TEXAS THEFT LIABILITY ACT

74.     Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

75.     On information and belief, defendants have misappropriated Frito-Lay's confidential, proprietary, and trade secret information by unlawfully appropriating property. Tex. Civ. Prac. & Rem. Code § 134.002(2).  Defendants are "persons" as that term is defined in the Act.  *See id.* § 134.002(1).

76.     In addition, defendants have committed theft of trade secrets as defined in the Act and Texas Penal Code § 31.05(b).

77.     Defendants' conduct has caused and is causing injury to Frito-Lay.

### COUNT ELEVEN:  CONSTRUCTIVE TRUST

78.     Frito-Lay realleges and incorporates by reference the following allegations as though fully set forth here.

79.     Because of its unlawful conduct, as set forth above, Defendants and their employees, affiliates, agents, subsidiaries, and related companies hold in constructive trust for Frito-Lay all issued patents, patent applications, trade secrets, and other assignable intellectual property that were derived, in whole or in part, from Frito-Lay's technology, trade secrets, or other proprietary information.

80.     This Court should order Defendants and their employees, affiliates, agents, subsidiaries, and related companies, to assign to Frito-Lay any issued patents, patent

applications, trade secrets, and other assignable intellectual property derived, in whole or in part, from any Frito-Lay  technology, trade secret, or other proprietary information.

## COUNT  TWELVE :  UNJUST ENRICHMENT

81.    Frito-Lay realleges and incorporates by reference the foregoing allegations as though fully set forth here.

82.    The acts of Defendants complained of herein constitute unjust enrichment of Defendants at Frito-Lay's expense.

## PRELIMINARY INJUNCTION

83.    Frito-Lay asks the Court to enter a preliminary injunction to prevent further irreparable injury to Frito-Lay pending final resolution of this lawsuit, at which time a permanent injunction will be warranted by the facts stated above.  Frito-Lay asks the Court to enjoin Defendants from using Defendants' Design and Trade Dress or any other mark and trade dress that is confusingly similar to Frito-Lay'S TOSTITOS SCOOPS! product design and packaging in connection with the promotion, advertising, manufacture, distribution, offering for sale, or sale of any tortilla chips, including any further manufacture, sale, or distribution of BOWLZ or CUPZ tortilla chips.   Frito-Lay also asks the Court to enjoin Defendants from using manufacturing processes that infringe the '344 Patent or use Frito-Lay's trade secrets.

84.    Frito-Lay has alleged causes of action of trademark, trade dress, patent infringement and misappropriation of trade secrets against Defendants, and as indicated in this Complaint, Frito-Lay has a probable right of recovery and likelihood of succeeding on the merits.  Frito-Lay will suffer irreparable harm without Court intervention and for which there is no adequate remedy at law.

85.     As a direct and proximate result of Defendants' wrongful actions, as set forth in this Complaint, Frito-Lay will suffer injury that will be irreparable and for which no remedy at law exists without the protections of injunctive relief.  Frito-Lay is willing to post the necessary reasonable bond to facilitate the injunctive relief requested.

86.     Wrongful, damaging conduct has occurred and will continue to occur if not enjoined.  Defendants are intent on exploiting Frito-Lay's TOSTITOS SCOOPS! product design and packaging, infringing the '344 Patent, and using Frito-Lay's trade secrets in violation of governing law and must be restrained from doing so.

87.     The public interest is served by an injunction as it protects against the confusion and deception of consumers, as described above, and it protects the substantial investment made by Frito-Lay in creating and preserving its TOSTITOS SCOOPS! product design and packaging and '344 Patent.

## REQUESTED RELIEF AND REQUEST FOR PERMANENT INJUNCTION

Frito-Lay requests the following relief:

A.     That Defendants and Defendants' officers, agents, servants, attorneys, employees, any companies owned or controlled by Defendants, and their affiliates, successors and assigns, and all of those in active concert or participation with any of them who receive notice directly or otherwise, be preliminarily and permanently enjoined and restrained from using or seeking to register any mark that is confusingly similar to the TOSTITOS SCOOPS! product design or packaging, or any other symbols or indicia associated with Frito-Lay and/or confusingly similar to the TOSTITOS SCOOPS! product design or packaging, or likely to dilute the distinctiveness thereof, or any copies, simulations, variations, mutilated versions, or colorable imitations thereof (all of the foregoing, "Prohibited Designations"), as, or as part of, a trademark, service mark,

trade name, business name, fictitious business name, or other identifier, or otherwise presenting such Prohibited Designations to the public or trade, including any further manufacture, sale, or distribution of BOWLZ or CUPZ tortilla chips;

B.      That Defendants and Defendants' officers, agents, servants, attorneys, employees, any companies owned or controlled by Defendants, and their affiliates, successors, and assigns, and all of those in active concert or participation with any of them who receive notice directly or otherwise, be preliminarily and permanently enjoined and restrained from using manufacturing processes that infringe the '344 Patent or use Frito-Lay's trade secrets;

C.      That Defendants be ordered to file with the Court and serve upon Frito-Lay's counsel within thirty (30) days after entry and service on Defendants of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the requirements of the injunction;

D.      That Frito-Lay recover all actual, punitive, and other damages to which it is entitled as a result of Defendants' activities;

E.      An equitable accounting be directed to determine Defendants' profits resulting from their infringement and other activities complained of herein, and that such profits be paid over to Frito-Lay, increased as the Court finds to be just under the circumstances of this case;

F.      A constructive trust over, and assignment to Frito-Lay of, all inventions, patents, patent applications, trade secrets, and other assignable intellectual property derived in whole or in part from Frito-Lay's technology, trade secrets, or proprietary information;

G.      That Frito-Lay's damages be enhanced and that the Court find that this is an exceptional case;

H.      That Frito-Lay recover its reasonable attorneys' fees;

I.      That Frito-Lay recover the costs of this action, and pre- and post-judgment interest; and

J.      That Frito-Lay be awarded such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Frito-Lay demands a trial by jury on all issues triable of right by a jury.

Respectfully submitted,


*/s/ Timothy S. Durst*
Timothy S. Durst
State Bar No. 00786924
tim.durst@bakerbotts.com
Russell J. Crain
State Bar No. 24045717
russ.crain@bakerbotts.com
Susan Cannon Kennedy
State Bar No. 24051663
susan.kennedy@bakerbotts.com
Jonathan R. Mureen
State Bar No. 24060313
jon.mureen@bakerbotts.com

BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone:  214-953-6500
Facsimile: 214-953-6503

Clyde M. Siebman
SIEBMAN, BURG, PHILLIPS
& SMITH, LLP
Federal Courthouse Square
300 N. Travis St.
Sherman, TX 75090
(903) 870-0070
(903) 870-0066 Telefax

**ATTORNEYS FOR PLAINTIFF
FRITO-LAY NORTH AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 17th day of August, 2012, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail and first class mail on this same date.

*/s/ Susan Cannon Kennedy*
Susan Cannon Kennedy