# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | | |
|---|---|---|---|
| FRITO-LAY NORTH AMERICA, INC. | § | | |
| | § | | |
| v. | § | CIVIL ACTION NO. 4:12cv74 | |
| | § | (Judge Mazzant) | |
| MEDALLION FOODS, INC. and | § | | |
| RALCORP HOLDINGS, INC. | § | | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS 1, 2, 3, 5, 6, 9, AND COUNTERCLAIM 1

Pending before the Court is Defendants' Motion for Summary Judgment on Counts 1, 2, 3, 5, 6, 9, and Counterclaim 1 (Dkt. #101). Having considered the relevant pleadings, the Court finds Defendants' motion should be denied.

## BACKGROUND

Plaintiff brings this lawsuit against Defendants alleging claims of trademark infringement, trade dress infringement, unfair competition, and dilution under the United States Trademark Act; for willful patent infringement under the patent laws of the United States; for trademark dilution under Texas Business and Commerce Code § 16.29; for trademark infringement, misappropriation of trade secrets, unfair competition by simulation of appearance of goods, misappropriation of time, labor, skill, and money, and unjust enrichment under common law; and for misappropriation of trade secrets in violation of Texas Civil Practice and Remedies Code § 134.002(2) (Dkt. #90, ¶ 1).

On September 7, 2012, Defendants filed their motion for summary judgment on Plaintiff's federal and state common law trademark claims asserting that they are entitled to summary judgment on the grounds that Plaintiff's U.S. Trademark Registration No. 2,766,278 (the "'278 registration") is a product configuration of a functional tortilla chip, and therefore, not

1

protectable under the Lanham Act (Dkt. #101, #102, #103, #104, #105, #106, #107, #108, #109). On September 25, 2012, Plaintiff filed its response (Dkt. #123). Defendants filed their reply on October 9, 2012 (Dkt. #134). On October 22, 2012, Plaintiff filed its sur-reply (Dkt. #145).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary

judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209

F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative

evidence. *Anderson*, 477 U.S. at 257. The Court must consider all of the evidence but refrain

from making any credibility determinations or weighing the evidence. *See Turner v. Baylor*

*Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants argue they are entitled to summary judgment because the '278 registration

"represents an edible tool designed to be more suitable than flat chips for scooping and eating

dips" (Dkt. #101 at 1). Defendants contend that because the Lanham Act offers no protection to

functional product configurations, the Court should grant summary judgment in favor of

Defendants and cancel the '278 registration.

Plaintiff asserts their Tostitos SCOOPS! design is a valid non-functional mark (Dkt. #123

at 1). Plaintiff argues that Defendants improperly focus their argument on the general bowl-

shape of the chip, rather than the overall design. *Id.* Plaintiff contends that the overall design

presents an "ornamental and distinctive design that is not dictated by function." *Id.* Further,

Plaintiff argues that the functionality determination is an issue of fact, which is most

appropriately left to the jury to determine. *Id.* at 2.

"The Lanham Act gives a seller or producer the exclusive right to 'register' a trademark,

and to prevent his or her competitors from using that trademark." *Qualitex Co. v. Jacobson*

*Products Co., Inc.*, 514 U.S. 159, 162 (1995) (internal citations omitted). The Act, however,

limits the scope of trade dress protection by providing that "the person who asserts trade dress

protection has the burden of proving that the matter sought to be protected is not functional."

*Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002) (quoting 15

U.S.C. § 1125(a)(3)).  Registration provides:

> prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration…

15 U.S.C. § 1115(a).  "The 'functionality doctrine' prevents a producer from using trademark

law to inhibit legitimate competition by controlling a useful product feature."  *Poly-America, LP*

*v. Stego Indus.*, LLC, No. 3:08-CV-2224-G, 2011 WL 3206687, at *5 (N.D. Tex. July 27, 2011)

(citing *Qualitex*, 514 U.S. at 164).  "If a product's functional features could be used as

trademarks…, a monopoly over such features could be obtained without regard to whether they

qualify as patents and could be extended forever (because trademarks may be renewed in

perpetuity)."  *Qualitex*, 514 U.S. at 164-65.

"The functionality of a proposed mark is a question of fact."  *In re Becton, Dickinson and*

*Co.*, 675 F.3d 1368, 1372 (Fed. Cir. 2002) (citations omitted)[1]; *Natural Polymer Int'l Corp. v. S*

*& M Nutec, LLC*, No. 3:03-CV-0461-P, 2004 WL 912568, at *3 (N.D. Tex. Apr. 27, 2004) ("All

courts have held that the [i]nquiry as to functionality is a question of fact." (quoting 1

MCCARTHY, J. THOMAS, *McCarthy on Trademarks and Unfair Competitions* § 7:71 (4th ed.

2003)).  Courts have distinguished between "*de facto* functional features, which may be entitled

to trademark protection, from *de jure* functional features, which are not."  *Poly-America*, 2011

WL 3206687, at *5 (citing *Valu Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274 (Fed.

Cir. 2002)).  "De facto functionality simply means that a design has a function…such

functionality is irrelevant to the question of whether a mark as a whole is functional so as to be

---

[1] The Court recognizes that Fifth Circuit law controls the claims under the Lanham Act; however, the Court also finds Federal Circuit law to be persuasive regarding *de facto* and *de jure* functionality and not contrary to decisions made by the Fifth Circuit.

ineligible for trademark protection." *In re Becton*, 675 F.3d at 1373-74; *see also Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991). "De jure functionality 'means that the product is in its particular shape because it works better in this shape.'" *Id.* at 1374 (citation omitted). In *In re Becton*, the Federal Circuit explained:

> Where a mark is composed of functional and non-functional features, whether "an overall design is functional should be based on the superiority of the design as a whole, rather than on whether each design feature is 'useful' or 'serves a utilitarian purpose.'" *Textron* cited as an example the Coca-Cola bottle, noting that the bottle's significant overall non-functional shape would not lose trademark protection simply because "the shape of an insignificant element of the design, such as the lip of the bottle, is arguably functional." Likewise, a mark possessed of significant functional features should not qualify for trademark protection where insignificant elements of the design are non-functional.

675 F.3d at 1374 (citing *Textron, Inc. v. Intern'l Trade Commission*, 753 F.2d 1019, 1025 (Fed. Cir. 1985)) (internal citations omitted).

The primary test for functionality is whether the product feature is "essential to the use or purpose of the product or if it affects the cost or quality of the product." *Eppendorf,* 289 F.3d at 355. "A feature is 'essential to the use or purpose' of a product if it serves any significant function other than to distinguish a firm's goods or identify their source." *Poly-America*, 2011 WL 3206687, at *10 (citing *Qualitex*, 514 U.S. at 165-66). "'Essential,' as used in the traditional test of functionality, therefore, does not equate a layman's understanding of the word; it is a term of art, used to distinguish product features that only serve to identify a product's source from those that serve 'any other significant function.'" *Id.* (citing *Qualitex*, 514 U.S. at 166).

Defendants argue that Plaintiff's utility patents claim the utility of a bowl-shaped design (Dkt. #101 at 10). Defendants further claim that Plaintiff's advertisements focus the consumer's attention on the functional aspects of the tortilla chip, specifically the bowl-shaped feature that is

created for dipping. *Id*. at 16-17. In addition, Defendants refer to Plaintiff's internal documents that "trumpet the utility of SCOOPS! as a dipping tool." *Id*. at 20.

In response, Plaintiff argues that Defendants ignore the overall trade dress of Tostitos SCOOPS! which contain the following elements, several of which Plaintiff contends are non-functional: (1) the flat circular base; (2) the bowl-shape; (3) the fluted edges; (4) the essentially uniform height; (5) the extension of the flutes down the entire height of the bowl; (6) the extension of the flutes all the way around the entire bowl; (7) forming multiple outer and inner points; and (8) the essential uniformity of the outer points and inner points so that they are approximately equidistant from each other, like a star (Dkt. #123 at 10). Plaintiff asserts that these features are ornamental or arbitrary design features which contribute to the overall distinctive appearance of the SCOOPS!. In addition, Plaintiff notes that the Patent and Trademark Office ("PTO") issued a Federal Trademark Registration, which is evidence of the validity of the registration.

The Court agrees with Plaintiff that several fact issues remain that are most appropriately left to a jury to determine. Although this Court must consider all of the evidence, the Court cannot make credibility determinations or weigh the evidence, as that is the province of the jury. *Turner*, 476 F.3d at 343. It appears that there is competing evidence indicating the presence of both functional and non-functional features of the Tostitos SCOOPS! design. It is more appropriate for a jury to consider whether the design as a whole is functional or not.

Therefore, the Court finds that Defendants' motion for summary judgment should be denied.

**CONCLUSION**

Based on the foregoing, the Court finds Defendants' Motion for Summary Judgment on

Counts 1, 2, 3, 5, 6, 9, and Counterclaim 1 (Dkt. #101) is **DENIED**.

      **IT IS SO ORDERED.**

      **SIGNED this 4th day of January, 2013.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE