UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FRITO-LAY NORTH AMERICA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | No.  4:12-CV-00074-ALM |
| | § | |
| MEDALLION FOODS, INC. and RALCORP | § | |
| HOLDINGS, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PROPOSED JURY INSTRUCTIONS**
**OF DEFENDANTS MEDALLION FOODS, INC. AND RALCORP HOLDINGS, INC.**

Defendants Medallion Foods, Inc. and Ralcorp Holdings, Inc. (collectively, "Medallion")

submit the attached proposed jury instructions and verdict forms in compliance with the Court's

Scheduling Order.  Medallion reserves the right to submit requests for additional or modified

instructions if the jury issues change or new issues arise that are no covered in the attached

proposed instruction or the proposed instructions submitted by Plaintiff Frito-Lay North

America, Inc.

**MEDALLION'S PROPOSED PRELIMINARY INSTRUCTION NO. 1**

<u>PRELIMINARY INSTRUCTIONS</u>

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case.  As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure.  From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement.  Opening statements are intended to assist you in understanding the evidence.  What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence.  Then, the defendant will have an opportunity to call witnesses and present evidence.  After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence.  After all the evidence is completed, the lawyers will again address you to make final arguments.  Then I will instruct you on the applicable law.  You will then retire to deliberate on a verdict.

Keep an open mind during the trial.  Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

If you would like to take notes during the trial, you may do so.  If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony.  Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes.  If you do not take notes, rely on your own independent memory of the testimony.  Do not be

unduly influenced by the notes of other jurors.  A juror's notes are not entitled to any greater weight than the-recollection of each juror concerning the testimony.

Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.  On the other hand, any exhibits may be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.  Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case.  If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately.  Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them.  It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case.  You are to be guided solely by what you see and hear in this trial.  Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

Adapted from Fifth Circuit Pattern Jury Instructions – Civil (2006); Instruction No. 1.1.

## MEDALLION'S PROPOSED PRELIMINARY INSTRUCTION NO. 2

### CONTENTIONS OF THE PARTIES

At issue in this case are claims by the plaintiff for trademark infringement, trade dress infringement, trademark dilution, patent infringement, and misappropriation of trade secrets.

With regard to trademark infringement, the plaintiff claims that the defendants' bowl-shaped tortilla chips infringe the plaintiff's trademark, U.S. Trademark Registration No. 2,766,278 ("the '278 trademark).  The defendants deny that the '278 trademark is enforceable and deny that they infringe the '278 trademark.

In its claim for trade dress infringement, the plaintiff contends that the packaging the defendants use for BOWLZ bowl-shaped tortilla chips infringes the plaintiff's packaging trade dress for TOSTITOS SCOOPS!.  The defendants deny that the plaintiff's packaging trade dress for TOSTITOS SCOOPS! is enforceable and deny that they infringe the plaintiff's trade dress.

With respect to trademark dilution, the plaintiff claims that similarities between the defendants' bowl-shaped tortilla chips and the '278 trademark have diluted the distinctiveness of the '278 trademark.  The defendants deny that the '278 trademark is enforceable, deny that it is sufficiently famous to support a claim for dilution, and deny that their bowl-shaped tortilla chips have diluted its distinctiveness.

As to patent infringement, the plaintiff contends that the defendants' manufacturing process infringes claims 1, 5-8, 12, and 16 of the plaintiff's U.S. Patent No. 6,610,344 ("the '344 patent").  The defendants deny that they infringe any asserted claim of the '344 patent and contend that the asserted claims of the '344 patent are invalid.

4

Finally, with regard to misappropriation of trade secrets, the plaintiff claims that the defendants misappropriated certain trade secrets from the plaintiff.  The defendants deny that the information at issue is a trade secret and deny that they misappropriated it from the plaintiff.

**MEDALLION'S PROPOSED PRELIMINARY INSTRUCTION NO. 3**

<u>BURDENS OF PROOF</u>

There are two different burdens of proof involved in this case.  The first is "preponderance of the evidence," and the second is "clear and convincing evidence."

A "preponderance of the evidence" means evidence that persuades you that something is more likely true than not true.  The plaintiff must prove each of its claims by a preponderance of the evidence.  If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendants as to that claim.

"Clear and convincing evidence" means evidence that produces in your mind a firm belief or conviction as to the matter at issue.  This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.  In order to establish that the plaintiff's patent is invalid, the defendants have the burden of proving invalidity by clear and convincing evidence.

In deciding whether any fact has been proven under either burden of proof, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Adapted from Fifth Circuit Pattern Jury Instructions—Civil (2006); Instruction Nos. 2.14, 2.20.

**MEDALLION'S PROPOSED PRELIMINARY INSTRUCTION NO. 4**

<u>CONSIDERATION OF THE EVIDENCE</u>

You must consider only the evidence in this case.  However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider.  One is direct evidence—such as testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Fifth Circuit Pattern Jury Instructions – Civil (2006); Instruction No. 2.16.

**MEDALLION'S PROPOSED PRELIMINARY INSTRUCTION NO. 5**

<u>IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS</u>

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said something, or failed to say something, that was different from the testimony the witness gave at trial.

Adapted from Fifth Circuit Pattern Jury Instructions – Civil (2006); Instruction No. 2.16.

## MEDALLION'S PROPOSED INSTRUCTION NO. 1

<u>DISPUTE BETWEEN THE PARTIES</u>

At issue in this case are claims by the plaintiff for trademark infringement, trade dress infringement, trademark dilution, patent infringement, and misappropriation of trade secrets. The plaintiff must prove each necessary element of each of its claims by a preponderance of the evidence.

With regard to trademark infringement, the plaintiff claims that the defendants' bowl-shaped tortilla chips infringe the plaintiff's trademark, U.S. Trademark Registration No. 2,766,278 ("the '278 trademark).  The defendants deny that the '278 trademark is enforceable and deny that they infringe the '278 trademark.

In its claim for trade dress infringement, the plaintiff contends that the packaging the defendants use for BOWLZ bowl-shaped tortilla chips infringes the plaintiff's packaging trade dress for TOSTITOS SCOOPS!.  The defendants deny that the plaintiff's packaging trade dress for TOSTITOS SCOOPS! is enforceable and deny that they infringe the plaintiff's trade dress.

With respect to trademark dilution, the plaintiff claims that similarities between the defendants' bowl-shaped tortilla chips and the '278 trademark have diluted the distinctiveness of the '278 trademark.  The defendants deny that the '278 trademark is enforceable, deny that it is sufficiently famous to support a claim for dilution, and deny that their bowl-shaped tortilla chips have diluted its distinctiveness.

As to patent infringement, the plaintiff contends that the defendants' manufacturing process infringes claims 1, 5-8, 12, and 16 of the plaintiff's U.S. Patent No. 6,610,344 ("the '344 patent").  The defendants deny that they infringe any asserted claim of the '344 patent and

contend that the asserted claims of the '344 patent are invalid.  Defendants have the burden of proving patent invalidity by clear and convincing evidence.

Finally, with regard to misappropriation of trade secrets, the plaintiff claims that the defendants misappropriated certain trade secrets from the plaintiff.  The defendants deny that the information at issue is a trade secret and deny that they misappropriated it from the plaintiff.

**MEDALLION'S PROPOSED INSTRUCTION NO. 2**

<u>OVERVIEW OF TRADEMARK AND TRADE DRESS</u>

As I have mentioned, the plaintiff claims that the defendants have infringed the plaintiff's trademark and trade dress.

A trademark is a word, symbol, or combination of words or symbols used to identify a product, to distinguish a product from those manufactured or sold by others, and to indicate the source of a product.

A trade dress is a type of trademark. The term "trade dress" refers to the total image of a product, product packaging, product label, product design, or a combination of these things. It includes features such as size, shape, color or color combinations, texture, graphics, or particular sales techniques.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark and trade dress owners to show ownership of their products and control their products' reputations.

Adapted from Seventh Circuit Pattern Civil Jury Instructions (2009), Instruction No. 13.1.1.

## MEDALLION'S PROPOSED INSTRUCTION NO. 3

### '278 TRADEMARK INFRINGEMENT

The plaintiff claims that the defendants infringed the plaintiff's '278 trademark.  To succeed on this claim, the plaintiff must prove by a preponderance of the evidence that the defendants used the '278 trademark in a manner that is likely to cause confusion about whether the defendants' product is a product of the plaintiff, among a significant number of people who buy or use, or consider buying or using, the product or similar products.

In deciding this, you should consider the following:

1.      Whether the '278 trademark is a strong trademark;

2.      Whether the '278 trademark is similar to the defendants' bowl-shaped tortilla chips;

3.      Whether TOSTITOS SCOOPS! is a similar product to the defendants' bowl-shaped tortilla chips;

4.      Whether TOSTITOS SCOOPS! and the defendants' bowl-shaped chips are sold by the same retailers and purchased by the same consumers;

5.      Whether TOSTITOS SCOOPS! and the defendants' bowl-shaped tortilla chips are advertised in the same media;

6.      Whether the defendants intended to confuse consumers about whether the plaintiff is the source of the defendants' bowl-shaped tortilla chips;

7.      Whether consumers have actually been confused about whether the plaintiff is the source of the defendants' bowl-shaped tortilla chips; and

8.      How much attention consumers of tortilla chips pay to the source of the tortilla chips they purchase.

The weight to be given to each of these factors is up to you to determine.  The presence of a particular factor or number of factors does not require you to find that the plaintiff proved a likelihood of confusion by a preponderance of the evidence.

If you find that the plaintiff has proved this claim by a preponderance of the evidence, you must then consider whether the '278 trademark is functional as explained in Instruction No. __ and whether the plaintiff abandoned the '278 trademark as explained in Instruction No. __.  If you find that the '278 trademark is functional or has been abandoned, or if you find that the plaintiff did not prove a likelihood of confusion by a preponderance of the evidence, then you must find for the defendants on this claim.

Adapted from Seventh Circuit Pattern Civil Jury Instructions (2009), Instruction Nos. 13.1.2 & 13.1.2.3; *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 478-85 (5th Cir. 2008).

## MEDALLION'S PROPOSED INSTRUCTION NO. 4

<u>UNENFORCEABILITY OF '278 TRADEMARK –
FUNCTIONALITY</u>

A trademark that is functional is not enforceable.  A product shape trademark, like the '278 trademark, is functional if it is essential to the product's use or purpose, or if it affects the product's cost or quality.  The availability of alternative designs is irrelevant.

A product shape is "essential" to the product's use or purpose if it is part of the actual benefit that consumers wish to purchase when they buy the product.  Patents that claim the product shape as a useful invention, patents that discuss the purpose of the product shape, and advertising materials that tout the utilitarian advantages of the product shape are evidence that a product shape is functional.  A product shape is non-functional if its shape or form makes no contribution to the product's function or operation—that is, if the product shape serves no purpose other than to identify the source of the product.

In considering whether the '278 trademark is functional, you should focus on the design as a whole, rather than on individual design features.  A design with significant functional features is functional, even though it may also have insignificant non-functional elements.

Adapted from Ninth Circuit Model Civil Jury Instructions (2007), Instruction No. 15.11; *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-32 (2001); *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1374-75 (Fed. Cir. 2012); *Eppendorf-Netheler-Hinz GmbH v. Ritter GmbH*, 289 F.3d 351, 357 (5th Cir. 2002); Mem. Opinion & Order, ECF No. 184, at 5.

## MEDALLION'S PROPOSED INSTRUCTION NO. 5

### UNENFORCEABILITY OF '278 TRADEMARK – ABANDONMENT

The owner of a trademark cannot exclude others from using the trademark if it has been abandoned.  The defendants contend that the '278 trademark has become unenforceable because the plaintiff abandoned it.  The defendants have the burden of proving abandonment by a preponderance of the evidence.

The owner of a trademark abandons the right to exclusive use of the trademark when the owner:

1.      Discontinues its use in the ordinary course of trade, intending not to resume using it; or

2.      Acts or fails to act so that the trademark's primary significance to prospective consumers has become the product itself and not the producer of the product.

You must find for the defendants on the plaintiff's claim for infringement of the '278 trademark if the defendants proved by a preponderance of the evidence that the plaintiff has abandoned the '278 trademark.

Adapted from Ninth Circuit Model Civil Jury Instructions (2007), Instruction No. 15.20; 15 U.S.C. § 1127.

## MEDALLION'S PROPOSED INSTRUCTION NO. 6

<u>PACKAGING TRADE DRESS INFRINGEMENT</u>

The plaintiff claims that the defendants' use of the BOWLZ packaging infringed the plaintiff's packaging trade dress for TOSTITOS SCOOPS!.  To succeed on this claim, the plaintiff must prove both of the following by a preponderance of the evidence:

1.     The packaging trade dress for TOSTITOS SCOOPS! is distinctive, as explained in Instruction No. __; and

2.     The defendants used the packaging trade dress for TOSTITOS SCOOPS! in a manner that is likely to cause confusion about whether BOWLZ is a product of the plaintiff, among a significant number of people who buy or use, or consider buying or using, the product or similar products, as explained in Instruction No. __.

If you find that the plaintiff has proved both of these things by a preponderance of the evidence, then you must find for the plaintiff.  However, if the plaintiff did not prove both of these things by a preponderance of the evidence, then you must find for the defendants.

Adapted from Seventh Circuit Pattern Civil Jury Instructions (2009), Instruction No. 13.1.2.

**MEDALLION'S PROPOSED INSTRUCTION NO. 7**

<u>PACKAGING TRADE DRESS – DISTINCTIVENESS</u>

The plaintiff must prove by a preponderance of the evidence that its packaging trade dress is "distinctive."  The plaintiff's packaging trade dress must be "distinctive" in order to be valid.  "Distinctive" means that the packaging is capable of distinguishing the plaintiff's product from the products of others.  A trade dress is "distinctive" if it is inherently distinctive or if it has acquired distinctiveness.

An inherently distinctive trade dress is one that consumers would almost automatically recognize as identifying a particular brand or source of the product.  To determine whether the plaintiff's packaging trade dress is inherently distinctive, you should consider it as a whole.

If you find that the plaintiff has not proven by a preponderance of the evidence that its packaging trade dress is inherently distinctive, you must also consider whether it has acquired distinctiveness.  A trade dress has acquired distinctiveness if, through the efforts of the plaintiff, consumers have come to consider the trade dress to be an indicator that the plaintiff is the source of the packaging.  In determining whether the plaintiff's packaging trade dress has acquired distinctiveness, you should consider:

1.      The length and manner of the plaintiff's use of the trade dress;

2.      The volume of the plaintiff's sales;

3.      The amount and manner of the plaintiff's advertising;

4.      The nature of the plaintiff's use of the trade dress in advertising materials;

5.      Consumer-survey evidence;

6.      Direct testimony from consumers; and

7.      Whether the defendants intended to confuse consumers about whether the plaintiff is the source of BOWLZ.

If you find that the plaintiff did not prove by a preponderance of the evidence that its packaging trade dress is distinctive, then you must find in favor of the defendants on the plaintiff's claim for packaging trade dress infringement.

Adapted from Seventh Circuit Pattern Civil Jury Instructions (2009), Instruction Nos. 13.1.2.2, 13.1.2.2.2,  13.1.2.2.3; *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998).

**MEDALLION'S PROPOSED INSTRUCTION NO. 8**

<u>PACKAGING TRADE DRESS INFRINGEMENT – LIKELIHOOD OF CONFUSION</u>

As I have told you, one of the things that the plaintiff must prove by a preponderance of the evidence in its claim for infringement of its TOSTITOS SCOOPS! packaging trade dress is that the defendants used the packaging trade dress for TOSTITOS SCOOPS! in a manner that is likely to cause confusion about whether BOWLZ is a product of the plaintiff, among a significant number of people who buy or use, or consider buying or using, the product or similar products.

In deciding this, you should consider the following:

1.      Whether the plaintiff's packaging trade dress is a strong trade dress;

2.      Whether the plaintiff's packaging trade dress is similar to the defendants' BOWLZ packaging trade dress;

3.      Whether TOSTITOS SCOOPS! is a similar product to BOWLZ;

4.      Whether TOSTITOS SCOOPS! and BOWLZ are sold by the same retailers and purchased by the same consumers;

5.      Whether TOSTITOS SCOOPS! and BOWLZ are advertised in the same media;

6.      Whether the defendants intended to confuse consumers about whether the plaintiff is the source of BOWLZ;

7.      Whether consumers have actually been confused about whether the plaintiff is the source of BOWLZ; and

8.      How much attention consumers of tortilla chips pay to the source of the tortilla chips they purchase.

The weight to be given to each of these factors is up to you to determine.  The presence of any particular factor or number of factors does not require you to find that the plaintiff proved a likelihood of confusion.

If you find that the plaintiff did not prove by a preponderance of the evidence that the BOWLZ packaging is likely to confuse consumers about whether BOWLZ is a product of the plaintiff, then you must find in favor of the defendants on the plaintiff's claim for packaging trade dress infringement.

Adapted from Seventh Circuit Pattern Civil Jury Instructions (2009), Instruction No. 13.1.2.3;

*Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 478-85 (5th Cir. 2008).

**MEDALLION'S PROPOSED INSTRUCTION NO. 9**

<u>TRADEMARK OR TRADE DRESS INFRINGEMENT – DAMAGES – DEFENDANTS'</u>

<u>PROFITS</u>

If you decide for the plaintiff on the plaintiff's claim for trademark infringement, according to Instruction No. __, or trade dress infringement, according to Instruction No. __, then you should consider the amount of money to award to the plaintiff, if any.  This amount is limited to damages that the plaintiff sustained as a direct result of the defendants' infringement.

The plaintiff is not automatically entitled to recover the defendants' profits from their sales of infringing products.  In determining whether it is appropriate to award the defendants' profits to the plaintiff, you should consider the following things:

1. Whether the defendants intended to confuse or deceive consumers;

2. Whether sales were diverted from the plaintiff to the defendants;

3. Whether the plaintiff has other adequate remedies;

4. Whether there was any unreasonable delay by the plaintiff in asserting its rights;

5. Whether there is any public interest in making the defendants' conduct unprofitable; and

6. Whether the defendants were palming off their products as products of the plaintiff.

Even if you decide that an award of the defendants' profits is appropriate, you must keep in mind that the plaintiff may only recover those profits attributable to the defendants' unlawful use of the plaintiff's trademark or trade dress.

If you decide for the defendants on the plaintiff's claim for trademark infringement and packaging trade dress infringement, then you should not consider this issue.

Adapted from Seventh Circuit Pattern Civil Jury Instructions (2009), Instruction No. 13.6.1; *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 338 (5th Cir. 2008); *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349-59 (5th Cir. 2002); *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 75 (5th Cir. 1979).

## MEDALLION'S PROPOSED INSTRUCTION NO. 10

<u>DILUTION OF THE '278 TRADEMARK</u>

The plaintiff claims that the defendants' sales of bowl-shaped tortilla chips have diluted the plaintiff's '278 trademark.  In order to prove that the defendants diluted the '278 trademark, the plaintiff must prove the following things by a preponderance of the evidence:

1.     The '278 trademark is distinctive and famous, as defined in Instruction No. __; and

2.     The defendants are using the '278 trademark; and

3.     The similarity between the '278 trademark and the defendants' bowl-shaped tortilla chips creates an association between the '278 trademark and the defendants' bowl-shaped chips; and

4.     That association is likely to impair the distinctiveness of the '278 trademark.

If you find that the plaintiff has proved each of these four things by a preponderance of the evidence, then you must find in favor of the plaintiff on its claim for dilution of the '278 trademark, unless you find that the '278 trademark is unenforceable because it is functional (as explained in Instruction No. __) or because it has been abandoned (as explained in Instruction No. __).  However, if you find that the plaintiff has not proved each of these four things by a preponderance of the evidence, then you must find in favor of the defendants.

Adapted from 15 U.S.C. § 1125(c); *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012).

**MEDALLION'S PROPOSED INSTRUCTION NO. 11**

<u>DILUTION OF THE '278 TRADEMARK – DEFINITION OF DISTINCTIVE AND FAMOUS</u>

As I mentioned, one of the things the plaintiff must prove in order to succeed on its claim for dilution of the '278 trademark is that the trademark is distinctive and famous.  A trademark is famous if it widely recognized by the general public as a designation of the source of the goods of the plaintiff.  In determining whether the '278 trademark is sufficiently distinctive and famous to support a claim for trademark dilution, you should consider the following factors:

1.      The duration, extent, and reach of the plaintiff's advertising of the trademark;

2.      The amount, volume, and geographic extent of the plaintiff's sales of goods offered under the mark;

3.      The extent that consumers actually recognize the '278 trademark; and

4.      The fact that the trademark is registered.

If you find that the plaintiff has not proven by a preponderance of the evidence that the '278 trademark is distinctive and famous, then you must find in favor of the defendants on the plaintiff's claim for dilution of the '278 trademark.

Adapted from 15 U.S.C. § 1125(c)(2)(A).

## MEDALLION'S PROPOSED INSTRUCTION NO. 12

<u>MISAPPROPRIATION OF TRADE SECRETS</u>

The plaintiff claims that the defendants misappropriated the plaintiff's trade secrets.  To succeed on this claim, the plaintiff must prove the following things by a preponderance of the evidence:

1.      The plaintiff owns a valid trade secret, as defined in Instruction No. __; and

2.      The defendants acquired the plaintiff's trade secret by improper means, as defined in Instruction No. __; and

3.      The defendants used the trade secret without authorization from the plaintiff, as defined in Instruction No. __; and

4.      The defendants' use of the trade secret caused damage to the plaintiff.

If you find that the plaintiff has proved each of these four things by a preponderance of the evidence, then you must find for the plaintiff.  However, if the plaintiff did not prove each of these four things by a preponderance of the evidence, then you must find for the defendants.

Adapted from *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 149-50 (5th Cir. 2004); *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 737-38 (Tex. Ct. App. 2010); *Avanti Sales Int'l, Inc. v. Pycosa Chem., Inc.*, No. 01-04-00983, 2005 WL 2670740, at *2 (Tex. Ct. App. Oct. 20, 2005).

## MEDALLION'S PROPOSED INSTRUCTION NO. 13

<u>MISAPPROPRIATION OF TRADE SECRETS – DEFINITION OF TRADE SECRET</u>

A trade secret is a formula, pattern, device, or compilation of information which is used in one's business and represents an advantage over competitors who do not know or use the information.  Matters of general knowledge in an industry are not trade secrets.  To qualify as a trade secret, the subject matter must be guarded and retained as a secret and must not be a matter of public knowledge or readily ascertainable by independent investigation.

In determining whether the plaintiff proved by a preponderance of the evidence that the plaintiff possessed specific, identifiable trade secrets, you should consider the following factors:

1.      The extent to which the information is known outside of the plaintiff's business;

2.      The extent to which the information is known by the plaintiff's employees and others involved in the plaintiff's business;

3.      The extent of the measures the plaintiff has taken to guard the secrecy of the information;

4.      The value of the information to the plaintiff and to the plaintiff's competitors;

5.      The amount of effort or money the plaintiff expended in developing the information; and

6.      The ease or difficulty with which others could properly acquire or duplicate the information.

The weight to be given to each of these factors is up to you to determine.  The presence of any particular factor or number of factors does not require you to find that something is a trade secret.

If you find that the plaintiff did not prove by a preponderance of the evidence that the information at issue is protectable as a trade secret, then you must find in favor of the defendants on the plaintiff's claim for misappropriation of trade secrets.

Adapted from *In re Bass*, 113 S.W.3d 735, 739-40 (Tex. 2003); *Wissman v. Boucher*, 240 S.W.2d 278, 279-80 (Tex. 1951); *Avanti Sales Int'l, Inc. v. Pycosa Chem., Inc.*, No. 01-04-00983, 2005 WL 2670740, at *2 (Tex. Ct. App. Oct. 20, 2005); *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 324-25 (5th Cir. 1998); O'Malley, Grenig & Lee, Federal Jury Practice & Instructions, § 127:11.

**MEDALLION'S PROPOSED INSTRUCTION NO. 14**

<u>MISAPPROPRIATION OF TRADE SECRETS – DEFINITION OF USE</u>

Another thing the plaintiff must prove in order to succeed on its claim for misappropriation of trade secrets is that the defendants "used" the plaintiff's trade secret. This means that the defendants must have either actually used the trade secret in a commercial setting in order to profit from it or disclosed the trade secret to a third party. Negative use, or examining information in order to learn what not to do, is not "use" of a trade secret. Mere conjecture or speculation as to this use is not sufficient.

If you find that the plaintiff did not prove by a preponderance of the evidence that the defendants used a trade secret that belongs to the plaintiff, then you must find in favor of the defendants on the plaintiff's claim for misappropriation of trade secrets.

Adapted from *Global Water Group, Inc. v. Atchley*, 244 S.W.3d 924, 930 (Tex. Ct. App. 2008); *Hurst v. Hughes Tool Co.*, 634 F.2d 895, 899 (5th Cir. 1981); O'Malley, Grenig & Lee, Federal Jury Practice & Instructions, § 127:13.

**MEDALLION'S PROPOSED INSTRUCTION NO. 15**

<u>MISAPPROPRIATION OF TRADE SECRETS – DEFINITION OF IMPROPER MEANS</u>

In order to succeed on its claim for misappropriation of trade secrets, the plaintiff must also prove by a preponderance of the evidence that the defendants acquired a trade secret of the plaintiff by improper means.  "Improper means" requires that the defendants had notice of both:

1.     The fact that the information is a trade secret; and

2.     That the disclosure by the third person to the defendants was a breach of that person's duty to the plaintiff.

If you do not find by a preponderance of the evidence that the defendants obtained a trade secret by improper means, then you must find in favor of the defendants on the plaintiff's claim for misappropriation of trade secrets.

Adapted from *Avanti Sales Int'l, Inc. v. Pycosa Chem., Inc.*, No. 01-04-00983, 2005 WL 2670740, at *2 (Tex. Ct. App. Oct. 20, 2005).

## MEDALLION'S PROPOSED INSTRUCTION NO. 16

### MISAPPROPRIATION OF TRADE SECRETS – REMEDIES

If you find that the defendants are liable for misappropriating a trade secret of the plaintiff, then you should consider the amount of money to award to the plaintiff, if any.

The appropriate measure for damages for misappropriation of trade secrets is a reasonable royalty.  In determining a reasonable royalty, you should calculate what the parties would have agreed to as a fair price for licensing the information.  Your determination does not depend on the parties' actual willingness to engage in such negotiations.  Your focus should be on what the parties' expectations would have been had they entered negotiations for royalties at the time the plaintiff's information was used.  The amount of damages should correspond to the actual contribution the plaintiff's information made to the defendants' commercial success, if any.

In determining what amount is appropriate as representing a reasonable royalty for use of the trade secret, you should consider:

1.      The effect of a license on the parties' competitive posture;

2.      Prices past purchasers or licensees may have paid;

3.      The value of the information to the plaintiff;

4.      The nature and extent of the defendants' intended use of the information; and

5.      Whether alternatives to using the information were readily available to the defendants.

The estimation of the plaintiff's damages may not be based on mere speculation.  If too few facts are available to permit you to calculate the plaintiff's damages, then you should not award any damages.

Adapted from *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 738-39 (Tex. Ct. App. 2010);

*Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539-40 (5th Cir. 1974).

## MEDALLION'S PROPOSED INSTRUCTION NO. 17

<u>THE PATENT INVOLVED IN THIS CASE</u>

Let's take a moment to look at the patent in this case, U.S. Patent No. 6,610,344 (also called the "'344 patent").  The cover page of the patent identifies the date the patent was granted and patent number along the top, as well as the inventors' names, the filing date, and a list of the prior art references considered in the PTO.

The specification of the patent begins with an abstract, also found on the cover page. The abstract is a brief statement about the subject matter of the invention.  Next come the drawings. The drawings illustrate various aspects or features of the invention.  The written description of the invention appears next and is organized into two columns on each page.  The specification ends with numbered paragraphs.  These are the patent claims.

I have already determined the meanings of the terms in the claims of the '344 patent. You have been given a document reflecting those meanings.  For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning. You must apply my definitions of these terms throughout this case.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity.  Those issues are yours to decide.  I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict. The first issue you will be asked to decide is whether Defendants have infringed the claims of the '344 patent. Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.  In general, Defendants may infringe the '344 patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product or by using a method meeting all the requirements of a claim of the '344 patent.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction

Project, Instruction No. 1.2.

## MEDALLION'S PROPOSED INSTRUCTION NO. 18

<u>THE POSITIONS OF THE PARTIES</u>

To help you follow the evidence, I will now give you a summary of the positions of the parties concerning patent infringement.  The case involves a patent owned by the plaintiff.  The patent involved in this case is United States Patent 6,610,344.  For convenience, the parties and I will often refer to this patent as the "'344 patent."  The numbers 344 are the last three digits of the patent number.

The plaintiff alleges that the defendants infringed claims 1, 5-8, and 12 by practicing a process that includes all of the requirements of those claims.  The plaintiff also alleges that the defendants infringe claim 16 of the '344 patent by producing a chip according to the process that practices every limitation of claim 16.  The defendants contend that the asserted claims are not infringed and are also invalid.  To fulfill your duties as jurors, you must decide whether claims 1, 5-8, 12, and 16 of the '344 patent have been infringed and whether those claims are invalid.

If you should decide that any claim of the '344 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to the plaintiff to compensate for that infringement.

## MEDALLION'S PROPOSED INSTRUCTION NO. 19

<u>THE MEANING OF CLAIM TERMS</u>

I have defined certain words and phrases in the patent claims.  During your deliberations you must apply these meanings:

- "sheeting" means "forming and cutting."

- "to form essentially even ranks" means "to move the pieces in each row with respect to one another so that the pieces in each row are positioned along an essentially straight line and to align the essentially straight line of pieces for molding."

- "alignment belt" means "a belt on which uneven rows of pieces are adjusted into essentially even rows."

- "adjusting positions of the substantially flat pieces on the alignment belt" means "moving positions of substantially flat pieces in each row on the alignment belt with respect to one another."

- "aligning the pieces" means "lining up positions of pieces in each row with respect to one another."

- "liquid-retaining shaped piece" means "at least one liquid-retaining shaped piece."

- "bowl-shaped chip" means "at least one bowl-shaped chip."

- "alignment system" means "a system, positioned after the sheeter cutter, for moving pieces in a row with respect to one another and for aligning rows of pieces for molding."

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction

Project, Instruction No. 3.3; September 27, 2012 Memorandum and Order (ECF No. 124).

Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project,

Instruction No. 1.3.

**MEDALLION'S PROPOSED INSTRUCTION NO. 20**

<u>DIRECT INFRINGEMENT-LITERAL INFRINGEMENT</u>

You must decide whether the defendants have practiced within the United States a process covered by claims 1, 5-8, or 12 of the '344 patent.  You must also decide whether the defendants have made, used, offered for sale, or sold a snack chip manufactured according to the process of claim 16 of the '344 patent.  You must compare each claim to the defendants' method to determine whether every element of the claim is included in the accused product or process.

To prove literal infringement, the plaintiff must prove that it is more probable than not that the defendants' method includes each and every element of the plaintiff's patent claim.  If the defendants' method lacks a single element recited in the plaintiff's patent claim, the defendants do not infringe that claim.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 3.2.

**MEDALLION'S PROPOSED INSTRUCTION NO. 21**

<u>INFRINGEMENT OF DEPENDENT CLAIMS</u>

So far, my instructions on infringement have applied to what are known as independent claims.  The patent also contains dependent claims.  Each dependent claim refers to an independent claim.  A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional elements.

In order to find infringement of dependent claims 5-8 or 12 of the '344 patent, you must first determine whether independent claim 1 of the patent has been infringed.  If you decide that the independent claim has not been infringed, then the dependent claim is not infringed.  If you decide that the independent claim has been infringed, you must then separately determine whether each additional element of the dependent claim has also been included in the accused method.  If each additional element has been included, then the dependent claim has been infringed.

The plaintiff must prove that it is more probable than not that a patent claim has been infringed.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 3.7.

**MEDALLION'S PROPOSED INSTRUCTION NO. 22**

<u>INVALIDITY – GENERALLY</u>

Patent invalidity is a defense to patent infringement.  You have the ultimate responsibility for deciding whether the claims of the patent are valid.

I will now instruct you on the invalidity issues you should consider.  As you consider these issues, remember that the defendants bear the burden of by clear and convincing evidence that the claims are invalid.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 5.1.

## MEDALLION'S PROPOSED INSTRUCTION NO. 23

<u>INVALIDITY BY ANTICIPATION</u>

The defendants may prove that claim 16 of the '344 patent is invalid by showing by clear and convincing evidence that the claim is anticipated.  A patent claim is anticipated if all of the patent claim's elements were present in one prior art reference dated more than one year before the effective filing date of the patent application.

The defendants can show that the patent application was not timely filed, that is, not filed within one year of the occurrence of any of the following events:

- If the claimed invention was already being publicly or commercially used in the United States before October 9, 2000 and that use was not primarily an experimental use controlled by the inventor to test whether the invention worked for its intended purpose; or

- If a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before October 9, 2000.  The claimed invention is not being sold or offered for sale if Frito-Lay shows that the sale or offer for sale was primarily experimental.  The claimed invention is ready for patenting if it was actually built, or if the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person of ordinary skill in the field of the invention to make and use the invention based on them.

For a claim to be invalid due to anticipation, all of the claimed requirements must have been either (1) disclosed in a single prior art reference or (2) implicitly disclosed in a single prior art reference as viewed by one of ordinary skill in the field of the invention.  The disclosure in a

reference does not have to be in the same words as the claim, but all of the requirements of the claim must be described in enough detail, or necessarily implied by or inherent in the reference, to enable someone of ordinary skill in the field of the invention looking at the reference to make and use at least one embodiment of the claimed invention.

A prior art reference also invalidates a patent claim when the claimed invention necessarily results from practice of the subject of the prior art reference, even if the result was unrecognized and unappreciated by one of ordinary skill in the field of the invention.

If you find that a patent claim is anticipated, you must find the patent claim invalid.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 5.7.

**MEDALLION'S PROPOSED INSTRUCTION NO. 24**

OBVIOUSNESS

In this case, Medallion and Ralcorp contend claims 1, 5-8, 12 and 16 of the '344 patent are invalid as obvious.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention at the time the application was filed.  This means that even if all the elements of the claim are not found in a single prior art reference, a person of ordinary skill in the field of the invention who knew about all of those references could have come up with the claimed invention.

But a patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention, although proof of this is not a requirement to prove obviousness.  Teachings, suggestions, and motivations may be found in written references including the prior art itself.  However, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ.  Additionally, teachings, suggestions, and motivations

may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should consider a variety of factors:

1. Whether Medallion and Ralcorp have identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.

2. Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way.

3. Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1. You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

2. You must decide the scope and content of the prior art.  In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention.  Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned.  Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

3. You must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

A. Factors tending to show nonobviousness:

1. Commercial success of a product due to the merits of the claimed invention;

2. A long-felt, but unsolved, need for the solution provided by the claimed invention;

3. Unsuccessful attempts by other to find the solution provided by the claimed invention;

4. Copying of the claimed invention by others;

5. Unexpected and superior results from the claimed invention;

6.   Acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention;

7.   Disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious; and

8.   Other evidence tending to show nonobviousness.

B.  Factors tending to show obviousness:

1.   Independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

2.   Other evidence tending to show obviousness.

You may consider the presence of any of the factors listed in A above as an indication that the claimed invention would not have been obvious at the time the claimed invention was made.  And you may consider the presence of the factors listed in B above as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

Medallion and Ralcorp must prove that it is highly probable that a claimed invention was obvious.  If you find that a claimed invention was obvious as explained above, you must find that claim invalid.

Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 5.9.

**MEDALLION'S PROPOSED INSTRUCTION NO. 25**

<u>SCOPE AND CONTENT OF PRIOR ART</u>

Frito-Lay and Medallion and Ralcorp disagree on whether WO 00/08950 to Fink, et al.; U.S. 5,060,783 to Chenevard; U.S. Patent No. 5,761,883 to Pruett, et al.; U.S. Patent No. 5,652,010 to Gimmler, et al.; U.S. 6,467,401 to Caridis, et al.; and GB 2,211,391 to Hopper should be included in the prior art you use to decide the validity of claims 1, 5-8, 12, and 16 of the '344 patent.  To qualify as prior art relevant to the '344 patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.  Remember that prior art is not limited to patents and published materials, but also includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 5.11.

## MEDALLION'S PROPOSED INSTRUCTION NO. 26

<u>DIFFERENCES OVER THE PRIOR ART</u>

In reaching your conclusion about whether or not claims 1, 5-8, 12, and 16 would have been obvious at the time the claimed invention was made, you should consider any difference or differences between WO 00/08950 to Fink, et al.; U.S. 5,060,783 to Chenevard; U.S. Patent No. 5,761,883 to Pruett, et al.; U.S. Patent No. 5,652,010 to Gimmler, et al.; U.S. 6,467,401 to Caridis, et al.; and GB 2,211,391 to Hopper and the claimed requirements.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 5.12.

## MEDALLION'S PROPOSED INSTRUCTION NO. 27

<u>LEVEL OF ORDINARY SKILL</u>

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention.  It is up to you to decide the level of ordinary skill in the field of the invention. You should consider all of the evidence introduced at trial in making this decision, including:

1.  The levels of education and experience of persons working in the field;

2.  The types of problems encountered in the field; and

3.  The sophistication of the technology.

Frito-Lay contends that the level of ordinary skill in the field of the invention was a person having a four-year degree in food science, food engineering, or similar area of study, and some experience working in the food processing industry (1-2 years); or alternatively having 4-6 years of experience working in product or process development in the relevant food processing industry.  Medallion and Ralcorp contend that the level of ordinary skill in the field was a person having (1) a BS in mechanical engineering, chemical engineering, or food science (or equivalent experience), and (2) 1-2 years of work experience in the design of material handling systems and food manufacturing equipment, or food manufacturing.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 5.13.

**MEDALLION'S PROPOSED INSTRUCTION NO. 28**

<u>PATENT INFRINGEMENT DAMAGES</u>

I will now instruct you on damages for patent infringement.  If you find that Medallion and Ralcorp have infringed one or more valid claims of the '344 patent you must determine the amount of money damages to which Frito-Lay is entitled.  By instructing you on damages, I do not suggest that one or the other party should prevail.  These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue.

The amount of damages must be adequate to compensate the plaintiff for the infringement, but it may not be less than a "reasonable royalty."  At the same time, your damages determination must not include additional sums to punish the defendants or to set an example. You may award damages only for the loss that the plaintiff proves was more likely than not caused by the defendants' infringement.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 6.1.

**MEDALLION'S PROPOSED INSTRUCTION NO. 29**

PATENT INFRINGEMENT DAMAGES – BURDEN OF PROOF

Where the parties dispute a matter concerning damages, it is the plaintiff's burden to prove that it is more probable than not that the plaintiff's version is correct.  The plaintiff must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  However, the plaintiff is not entitled to damages that are remote or speculative.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 6.2.

## MEDALLION'S PROPOSED INSTRUCTION NO. 30

<u>PATENT INFRINGEMENT DAMAGES – REASONABLE ROYALTY- DEFINITION</u>

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention.  A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place just before the time when the infringing sales first began.  In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations.  However, you must assume that both parties believed the patent was valid and infringed.  In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining the royalty that would have resulted from the hypothetical negotiation you may consider real world facts including the following to the extent they are helpful to you:

- Licenses or offers to license the patent at issue in this case;

- Licenses involving comparable patents;

- The licensing history of the parties;

- Licensing practices in the relevant industry;

- Whether the patent owner had an established policy of refusing to license the patent at issue;

- The relationship between the patent owner and the alleged infringer, including whether or not they were competitors;

- The significance of the patented technology in promoting sales of the alleged infringer's products and earning it profit;

- Alternatives to the patented technology and advantages provided by the patented technology relative to alternatives;

- The portion of the alleged infringer's profit that should be credited to the invention as distinguished from nonpatented features, improvements or contributions; and

- Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

Adapted from Draft Model Patent Jury Instructions prepared by the National Jury Instruction Project, Instruction No. 6.6.

**MEDALLION'S PROPOSED INSTRUCTION NO. 31**

<u>STIPULATIONS OF FACT FOR ALL CLAIMS</u>

The parties have agreed, or stipulated, to the following.  This means that both sides agree that these are facts.  You must therefore treat these facts as having been proved.

1.     The '344 Patent, entitled "Process for Making a Shaped Snack Chip," was issued by the United States Patent and Trademark Office on August 26, 2003.

2.     The asserted claims of the '344 Patent are claims 1, 5-8, 12, and 16.

3.     The plaintiff practices at least one claim of the '344 Patent.

4.     United States Trademark Registration No. 2,766,278 was issued by the United States Patent and Trademark Office on September 23, 2003.

5.     The defendants' BOWLZ and CUPZ tortilla chips are sold in Texas.

6.     Exhibits D114-D116, D218, D220-D224 are photographs the defendants' counsel took during an inspection of a bag of chips from 1997 like the bags of chips the plaintiff sold in a BehaviorScan test market in 1997 and made with a process disclosed in U.S. Patent No. 6,129,939.

7.     Exhibit D-269 is photographs the defendants' counsel took during an inspection of two bags of TOSTITOS SCOOPS! reference chips on December 19, 2012.

Adapted from Fifth Circuit Pattern Jury Instructions – Civil (2006); Instruction No. 2.3.

**MEDALLION'S PROPOSED INSTRUCTION NO. 32**

<u>MULTIPLE DEFENDANTS</u>

Although there is more than one defendant in this action, it does not follow from that fact alone that if one defendant is liable to the plaintiff, the other defendant also is liable.  Each defendant is entitled to a fair consideration of the evidence.  Neither defendant is to be prejudiced should you find against the other.  All instructions I give you govern the case as to each defendant.

Adapted from O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 103:14.

**MEDALLION'S PROPOSED INSTRUCTION NO. 33**

<u>CAUTIONARY INSTRUCTION ON DAMAGES</u>

You should not interpret the fact that I have given instructions about the plaintiff's

damages as an indication in any way that I believe that the plaintiff should, or should not, win

this case.

Fifth Circuit Pattern Jury Instructions – Civil (2006); Instruction No. 2.22.

## MEDALLION'S PROPOSED INSTRUCTION NO. 34

<u>INSTRUCTIONS ON DELIBERATIONS</u>

When you retire to the jury room to deliberate, you may take with you this charge and the exhibits that the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form.  Unless I direct you otherwise, do not reveal your answers until such time as you are discharged.  You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by meeting with you in the courtroom.  I will always first show the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

You may now retire to the jury room to conduct your deliberations.

Fifth Circuit Pattern Jury Instructions – Civil (2006); Instruction No. 2.12.

## PROPOSED VERDICT FORM

<u>VERDICT FORM:</u>

**Instructions:** When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form.  Your answer to each question must be unanimous.  Please refer to the Jury Instructions for guidance on the law applicable to the subject matter covered by each question.

## QUESTIONS AND ANSWERS

Based on the evidence admitted at trial and in accordance with the instructions as given by the Court, we, the jury, unanimously agree to the answers to the following questions:

**Part A:  Findings on the Plaintiff's Claim for Infringement of the '278 Trademark**

**Question A1.**  Do you find that the defendants proved that it is more likely than not that the plaintiff's '278 trademark is functional? [*Circle YES (for a finding in favor of the defendants) or NO (for a finding in favor of the plaintiff)*]

YES                    NO

*If you answered YES to Question A1, skip ahead to Part B.*

**Question A2.**  Do you find that the defendants proved that it is more likely than not that the plaintiff abandoned the '278 trademark? [*Circle YES (for a finding in favor of the defendants) or NO (for a finding in favor of the plaintiff)*]

YES                    NO

*If you answered YES to Question A2, skip ahead to Part B.*

**Question A3.**  Do you find that the plaintiff proved that it is more likely than not that a defendant's bowl-shaped tortilla chips are likely to confuse consumers as to whether those chips are a product of the plaintiff?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

Medallion Foods:      YES                    NO

Ralcorp Holdings:     YES                    NO

*If you answered NO to Question A3 for both defendants, skip ahead to Part B.*

**Question A4.**  *If you answered YES to Question A3 as to a defendant*, what is the dollar amount, if any, that the plaintiff should recover from that defendant in damages for infringement of the '278 trademark?  [*Do not award any damages against a defendant unless you answered YES as to that defendant in Question A3*]

_____                    _____
    Medallion Foods                               Ralcorp Holdings

**Part B:  Findings on the Plaintiff's Claim for Infringement of Packaging Trade Dress**

**Question B1.**  Do you find that the plaintiff proved that it is more likely than not that the plaintiff's packaging trade dress is distinctive?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of the defendants)*]

YES                          NO

*If you answered NO to Question B1, skip ahead to Part C.*

**Question B2.**  Do you find that the plaintiff proved that it is more likely than not that a

defendant's BOWLZ bowl-shaped tortilla chips are likely to confuse consumers as to whether

BOWLZ is a product of the plaintiff?  [*Circle YES (for a finding in favor of the plaintiff) or NO*

*(for a finding in favor of a defendant)*]

Medallion Foods:     YES                          NO

Ralcorp Holdings:    YES                          NO

*If you answered NO to Question B2 for both defendants, skip ahead to Part C.*

**Question B3.**  *If you answered YES to Questions B1 and B2 for a defendant*, what is the

dollar amount, if any, that the plaintiff should recover from that defendant in damages for

infringement of the '278 trademark?  [*Do not award any damages against a defendant unless*

*you answered YES as to that defendant in Question B1 and Question B2*]

_____          _____
Medallion Foods                        Ralcorp Holdings

**Part C:  Findings on the Plaintiff's Claim for Dilution of the '278 Trademark**

*If you answered YES to Question A1 or YES to Question A2, skip ahead to Part D.*

**Question C1.**  Do you find that the plaintiff has proved that it is more likely than not that

the '278 trademark is distinctive and famous?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

YES                    NO

*If you answered NO to Question C1, skip ahead to Part D.*

**Question C2.**  Do you find that the plaintiff proved that it is more likely than not that a defendant used the '278 trademark?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

Medallion Foods:      YES                    NO

Ralcorp Holdings:     YES                    NO

*If you answered NO to Question C2 for both defendants, skip ahead to Part D.*

**Question C3.**  Do you find that the plaintiff proved that it is more likely than not that a defendant's use of the '278 trademark created an association between a defendant's bowl-shaped tortilla chips and the '278 trademark?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

Medallion Foods:      YES                    NO

Ralcorp Holdings:     YES                    NO

*If you answered NO to Question C3 for both defendants, skip ahead to Part D.*

**Question C4.**  Do you find that the plaintiff proved that it is more likely than not that the association between a defendant's bowl-shaped tortilla chips and the '278 trademark is likely to impair the distinctiveness of the '278 trademark?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

Medallion Foods:        YES                NO

Ralcorp Holdings:       YES                NO

**Part D:  Findings on the Plaintiff's Claim for Misappropriation of Trade Secrets**

**Question D1.**  Do you find that the plaintiff proved that it is more likely than not that the information at issue is protectable as a trade secret?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

                        YES                NO

*If you answered NO to Question D1, skip ahead to Part E.*

**Question D2.**  Do you find that the plaintiff proved that it is more likely than not that a defendant acquired the plaintiff's trade secrets by improper means?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

Medallion Foods:        YES                NO

Ralcorp Holdings:       YES                NO

*If you answered NO to Question D2 for both defendants, skip ahead to Part E.*

**Question D3.**  Do you find that the plaintiff proved that it is more likely than not that a defendant used the plaintiff's trade secrets?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

| | | |
|---|---|---|
| Medallion Foods: | YES | NO |
| Ralcorp Holdings: | YES | NO |

*If you answered NO to Question D3 for both defendants, skip ahead to Part E.*

**Question D4.**  Do you find that the plaintiff proved that it is more likely than not that the plaintiff has suffered harm as a result of the defendants' use of the plaintiff's trade secrets?

[*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

| | | |
|---|---|---|
| Medallion Foods: | YES | NO |
| Ralcorp Holdings: | YES | NO |

**Question D5.**  *If you answered YES to Questions D1, D2, D3, and D4 for a defendant,* what is the dollar amount, if any, the defendant should pay to the plaintiff as a reasonable royalty for the use of the plaintiff's trade secrets?  [*Do not award any damages against a defendant unless you answered YES as to that defendant in Questions D1, D2, D3, and D4*].

_____          _____
Medallion Foods                            Ralcorp Holdings


**Part E:  Findings on the Plaintiff's Patent Infringement Claim**

**Question E1.**  Do you find that the plaintiff proved it is more likely than not that a defendant infringed any of the following claims of U.S. Patent No. 6,610,344?  [*Circle YES (for a finding in favor of the plaintiff) or NO (for a finding in favor of a defendant)*]

|          | Medallion Foods |     | Ralcorp Holdings |     |
|----------|-----------------|-----|------------------|-----|
| Claim 1  | YES             | NO  | YES              | NO  |
| Claim 5  | YES             | NO  | YES              | NO  |
| Claim 6  | YES             | NO  | YES              | NO  |
| Claim 7  | YES             | NO  | YES              | NO  |
| Claim 8  | YES             | NO  | YES              | NO  |
| Claim 12 | YES             | NO  | YES              | NO  |
| Claim 16 | YES             | NO  | YES              | NO  |

**Question E2.**  Do you find that the defendants proved by clear and convincing evidence that claim 16 of the '344 patent is invalid because it was not filed within the time required by law?  [*Circle YES (for a finding in favor of the defendants that the claim is invalid) or NO (for a finding in favor of the plaintiff)*]

YES                         NO

**Question E3.**  Do you find that the defendants proved by clear and convincing evidence that any of the asserted claims of the '344 patent would have been obvious to a person of ordinary skill in the field at the time the patent was filed given the prior art references and devices?  [*Circle YES (for a finding in favor of the defendants that the claim is obvious) or NO (for a finding in favor of the plaintiff)*]

Claim 1          YES          NO

Claim 5          YES          NO

Claim 6          YES          NO

Claim 7          YES          NO

Claim 8          YES          NO

Claim 12        YES          NO

Claim 16        YES          NO

**Question E4.**  *If you answered YES to Question E1 for a defendant*, what is the dollar amount, if any, that the defendant should pay to the plaintiff as a reasonable royalty for its infringement of the plaintiff's patent?

|  | Medallion Foods | Ralcorp Holdings |
|---|---|---|
| Reasonable Royalty rate: | _____ | _____ |
| Total Royalty Damages: | _____ | _____ |

**Your deliberations are over.  Have the foreperson sign and date the verdict form.**

Dated this _____ day of February, 2013.

_____

Foreperson

Dated: February 1, 2013                          Respectfully submitted,


                                                 By:/s/  David W. Harlan w/permission Wes Hill
                                                 David W. Harlan – LEAD ATTORNEY
                                                 dharlan@armstrongteasdale.com
                                                 Jennifer E. Hoekel
                                                 jhoekel@armstrongteasdale.com
                                                 B. Scott Eidson
                                                 seidson@armstrongteasdale.com
                                                 Daniel E. Sakaguchi
                                                 dsakaguchi@armstrongteasdale.com
                                                 Mark A. Thomas
                                                 mathomas@armstrongteasdale.com
                                                 Timothy D. Krieger
                                                 tkrieger@armstrongteasdale.com
                                                 Zachary C. Howenstine
                                                 zhowenstine@armstrongteasdale.com
                                                 ARMSTRONG TEASDALE LLP
                                                 7700 Forsyth Blvd., Suite 1800
                                                 St. Louis, Missouri 63105
                                                 (314) 621-5070 (telephone)
                                                 (314) 621-5065 (facsimile)

                                                 T. John Ward
                                                 State Bar No. 20848000
                                                 tjw@wsfirm.com
                                                 T. John Ward, Jr.
                                                 State Bar No. 00794818
                                                 jw@wsfirm.com
                                                 Wesley Hill
                                                 State Bar No. 24032294
                                                 wh@wsfirm.com
                                                 Claire Abernathy Henry
                                                 State Bar No. 24053063
                                                 claire@wsfirm.com
                                                 WARD & SMITH LAW FIRM
                                                 1127 Judson Rd., Ste. 220
                                                 Longview, Texas 75601
                                                 (903) 757-6400 (telephone)
                                                 (903) 757-2323 (facsimile

                                                 *Attorneys for Defendants Medallion Foods, Inc.*
                                                 and *Medallion Holdings, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on February 1, 2013, the foregoing document was served via electronic delivery upon all counsel of record.

/s/ Wesley Hill